# ROBERT W. SMITH v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

### Division Two, July 5, 1919.

1. **TESTIMONY: Expert: Chiropractic: Deposition: No Timely Objection.** The admission in evidence of the deposition of a chiropractic, who did not qualify so as to give an opinion regarding the effect of plaintiff's injuries upon his physical and mental functions, taken in May, defendant's counsel being present, and read in chief, without objection, at the trial in October, and to which no objection was made until after the deponent's cross-examination was read at some length, and then for the first time counsel for defendant announced that he was going to move to strike out every portion of the testimony which attempted to give an expert opinion, but did not point out specifically the portions he expected to have striken out, was not error. There be-

ing no designation of what portion of the deposition was incompetent, and consequently no ruling as to the admissibility of any specific portion of it, and no timely objection to it, its admission cannot be held to be error.

2. ———: ———: ———: Improper Question and Answer Withdrawn. Plaintiff, in taking the deposition of a chiropractic, asked a question which called for an expert opinion. Defendant objected because deponent was not qualified as an expert. The answer was recorded, an exception saved, the question repeated, and the objection renewed, whereupon plaintiff withdrew both the question and the former question and answer. Deponent was not qualified as an expert, but throughout his deposition, which was read without objection, had in effect answered the same and similar questions in detail. *Held*, that, there being no other exception to the rulings as to the admissibility of deponent's testimony, it cannot be conceived how the question and answer, even if they had not been withdrawn, injured defendant, for they added nothing to what deponent already had testified.

3. ———: Res Gestae: Contradicting Witness. Where the conductor of the train, of which plaintiff was a brakeman, had in his direct testimony for defendant, testified that no one had told him that the brakebeam of the car was down and that he did not know that the fireman or the plaintiff had gone under the car to adjust the beam, and on cross-examination was asked if he didn't come running up to the place where plaintiff was injured and say he had forgot the men were under the car, it was competent, for the purpose of contradiction, to prove by another witness, on rebuttal, that the conductor, at that time, was asked by the engineer why he turned the air on while the men were under the train and that he exclaimed, "My God, I forgot it; I didn't know what I was doing." [Following Gordon v. Railroad, 222 Mo. l. c. 531.]

4. INSTRUCTION: Knowledge: Actual and Imputed. Where the evidence tends to show that the conductor was told the brakebeam of a car was down and knew the plaintiff had gone under the car to adjust it, but did not necessarily know plaintiff was still under the car at the time he "cut in the air" which caused the floating lever to move and strike the plaintiff's head, and where there is also evidence tending to show that a "spot" signal was given, which required the conductor to know that something was wrong about the train concerning which it was his duty to obtain information, an instruction which tells the jury that if the conductor, at the time he cut in the air, knew, "or in the exercise of ordinary and reasonable care could and should have known," that the plaintiff was under the car, the defendant was guilty of negligence, is proper; the question, under such circumstances, is not solely one of actual knowledge.

Smith v. K. C. Southern Ry. Co.

5. ———: ———: ———: **Theory of Trial.** Besides, instructions offered by defendant telling the jury that if the conductor did not know and "could not have known in the exercise of ordinary care" plaintiff's perilous position he could not recover, precludes defendant from insisting that plaintiff's instruction should have confined his right to recover to the conductor's actual knowledge.

6. **VERDICT: Presumption: Finding of Every Fact.** The court must presume that the jury found every fact of which there was evidence on the issues properly submitted tending to support the verdict.

7. ———: **Deduction for Contributory Negligence: Award for Actual Damages Only: Remittitur.** Where the petition demanded $75,000 as damages, and there was some evidence of contributory negligence, and the instruction, under the provisions of the Federal Employers' Liability Act, directed the jury to make a proportionate deduction from the actual damages suffered, if they should find there was such contributory negligence, and they returned their verdict for $37,500, it cannot be held that they found the actual damages were $37,500; for the court cannot assume that the jury found any fact, where the evidence was contradictory, that would impair their verdict, and there being positive evidence that plaintiff was not guilty of contributory negligence, the excess may be corrected by *remittitur* if the court finds the verdict excessive as to the actual damages.

8. ———: **Excessive: $25,000.** Plaintiff's head was crushed between two beams of a car; his nose was mashed over to one side; the bones of the skull were broken into pieces, and some of them taken out, leaving a space unprotected by bone, an inch and a half long and an inch wide; he suffered with convulsions until an operation was performed, indicating pressure upon and injury to the brain; two years later the evidence indicates injury to the brain; his vision is impaired, he cannot turn his eyes laterally, can only focus them on objects directly in front, and is unable to read except for a few moments at a time; there is a suppurative discharge from his nose, accompanied by a disagreeable odor; he has an ataxic walk, and fibrillary tremors, involuntary and incapable of simulation, run over his body, and in walking he lifts his legs much higher than a normal man, indicating ataxia, and in stooping over has a sensation that his brain is dropping out through the hole in the forehead. Prior to his injury he was in perfect physical condition, was an athlete, possessed an unusually quick mind, learned easily and took interest in literary pursuits; his mind is now impaired, especially his memory, and scientific tests indicate his mind is about equal to that of a child ten years of age. At the time of his injury he was 24 years of age and receiving a hundred dollars a month, and since has been unable to earn anything. The jury returned a verdict for $37,500,

and that was reduced by the trial court to $25,000, which on appeal is, *held*, not excessive.

9. ———: ———: Rule. The court has never ruled that any verdict for personal injuries in excess of $25,000 is excessive. Every case must be determined on its own individual facts.

10. ———: ———: Value of Money. Twenty-five thousand dollars in 1904 was a much larger sum in purchasing power than the same sum in 1914.

Appeal from Jackson Circuit Court.—*Hon. Thomas Seehorn*, Judge.

AFFIRMED.

*Cyrus Crane* for appellant.

(1) The excessive verdict was not cured by the *remittitur* which the court ordered. The *remittitur* merely brings the verdict down to the maximum allowed by this court in the personal injury cases and does not preserve the deduction from the gross amount of damages which the jury apparently made or intended to make in the verdict. (a) There was evidence from which the jury could have found that the plaintiff was guilty of contributory negligence. (b) Total amount of damages demanded by plaintiff was $75,000. (c) The jury's verdict shows that it made a deduction on account of plaintiff's negligence. (d) The *remittitur* required by the court does not preserve such deduction. (e) The original verdict was manifestly excessive. (f) The defendant's right to a deduction because of contributory negligence must be strictly observed. Hadley v. Railway, 156 N. W. (Neb.) 765; Railway Co. v. Wright, 207 Fed. 281, 125 C. C. A. 25; Pennsylvania Co. v. Sheeley, 221 Fed. 901. (2) The verdict of the jury was excessive under either State or Federal decisions and a new trial should be ordered rather than a *remittitur*. The United States Supreme Court leaves the amount of damages to the trial and appellate courts. Railway Co. v. Bennett,

233 U. S. 80. Federal court allowances are not more liberal than those of Missouri. Duke v. Railway Co., 172 Fed. 684; Railway Co. v. Lindsey, 201 Fed. 836; Cain v. Railway Co., 199 Fed. 211. This court is free to follow its own decisions and, therefore, should grant a new trial. Partello v. Railway, 217 Mo. 645. *Remittitur* is only used as a cure where there is no other error in the record. Cook v. Globe Printing Co., 227 Mo. 471. (3) The court erred in admitting expert opinions from witness E. C. Herron because he was not qualified. The qualifications of this witness were for the court, and not for the jury, as the court erroneously held. Fullerton v. Fordyce, 144 Mo. 530; Benjamin v. St. Ry. Co., 50 Mo. App. 608; Bradford v. Railway, 64 Mo. App. 483; Gates v. Railway, 44 Mo. App. 492. This court is not given to treating fake practitioners as experts. Weltmer v. Bishop, 171 Mo. 110. The objection made to the testimony was sufficient. Railway v .Second St. Improvement, 256 Mo. 411; Railway v. Walsh, 197 Mo. 409. (4) The court erred in admitting evidence as to Conductor Johnson's statements made after the accident occured. They were not part of the *res gestae,* nor admissible as impeaching testimony. Koenig v. Railway Co., 173 Mo. 709; Wojtylak v. Coal Co., 188 Mo. 260; Barker v. Railway, 126 Mo. 143; Price v. Thornton, 10 Mo. 135; Rogers v. McCune, 19 Mo. 558; McDermott v. Railroad, 73 Mo. 516; Adams v. Railroad, 74 Mo. 553; Devlin v. Railroad 87 Mo. 545; State v. Hendricks, 172 Mo. 654; Gordon v. Railway Co., 222 Mo. 532. The alleged contradictory statements were not admissible for the purpose of impeachment. Hamburger v. Rinkle, 164 Mo. 407; Roe v. Bank, 167 Mo. 406. (5) Instruction one given on behalf of plaintiff was erroneous. There was no evidence or facts warranting the jury in finding that the conductor, "in the exercise of reasonable and ordinary care could and should have known that plaintiff was under the car."

12—279 Mo.

*A. N. Gossett* and *T. J. Madden* for respondent.

WHITE, C.—The plaintiff in an action for personal injuries was awarded a verdict against defendant in the Circuit Court of Jackson County for $37,500. Defendant's motion for new trial was overruled on condition that the plaintiff remit $12,500 from the verdict. This was accordingly done, judgment entered for $25,000, and the motion overruled. Thereupon the defendant appealed to this court.

The plaintiff was a brakeman in the service of the defendant. He was injured January 10, 1914, at Bates, Arkansas. He was working on a branch line running from Hetherman, Oklahoma, to Waldron, Arkansas. When the train, on the day mentioned, arrived at the town of Bates, it contained only three or four cars. At that point there stood on the siding a number of cars comprising a bridge-and-building outfit, consisting of seven to nine cars; these were to be taken into the train on which the plaintiff arrived. Considerable evidence was introduced to show the method by which this was done and to explain the operation of the train at that time. It is not necessary to state this in detail. Briefly, the engine and one or two cars were cut off from the train on the main line, brought on to the siding and attached to the bridge-and-building cars; the train was then run back on the main line and backed to the cars of the train which had been detached, for the purpose of coupling them on again. It seems that the conductor, a man named Johnson, remained with the section of the train which was left on the main track, while Smith, the plaintiff, was engaged in assisting to couple and line up the new cars that were brought into the train. While this was being done it was discovered that a brakebeam was down on a car near the engine. There was evidence tending to show that the fireman, a man named Weller, gave what is termed a "spot" signal, indicating to the conductor that something was wrong that required his attention. The testimony is

contradictory as to whether such spot signal was given, and if it was given whether the conductor was in position to see it.

The plaintiff testified, and was corroborated by another witness, that he called to the conductor and told him the brakebeam was down, and was directed by the conductor to go in and fix it. The fireman, Weller, notified the engineer that the brakebeam was down. Weller got a pick and went under the car for the purpose of attempting to repair the brakebeam, and plaintiff went under for the purpose of assisting, and while there he saw that a pin which goes through what is called a "floating lever" was out of position and he attempted to fix it. In doing that his head came between the floating lever and what is termed the "needle beam," which is attached to the bottom of a car and runs crosswise. At that time the conductor, Johnson, was coupling up the rear remnants of the train with that section which had been taken in, and in doing so found some difficulty which required time, but finally made the coupling. He then made the necessary hose connections for the air and, using the term applied by the men, "cut in the air." This caused the floating lever where Smith was working to move and strike Smith's head, crushing it between that appliance and what is called the needle beam, causing the injury for which he sues.

The question as to defendant's negligence was as to whether the conductor, Johnson, before cutting in the air, knew, or by the exercise of ordinary care could have known, that the brakebeam was down, and also knew, or by the exercise of ordinary care could have known, that some of the men were under the car fixing it. If he did it was conceded that he was negligent in cutting in the air, which would be likely to cause some movement and render the position of the men dangerous.

Also it was a question whether the plaintiff was negligent in placing himself in the position in which he was, without first cutting off the air from the car where he was working. The evidence on both of these proposi-

tions was conflicting. It seems to be conceded by the appellant that there was sufficient evidence of the defendant's negligence to warrant submission of that issue to the jury. But it is argued that the conduct of the plaintiff shows negligence upon his part so as conclusively to warrant a deduction under the Federal Employers' Liability Act from any actual damages found. There was sufficient evidence from which the jury might very properly have found that the plaintiff was not negligent in any respect, but was in the line of his duty and did not unnecessarily expose himself to a peril which might reasonably have been avoided; that he had a right to rely upon the conductor's observing ordinary care, and believed and had reason to believe that such conductor knew of his position. He swore, and there is other evidence corroborating him, that he had plenty of room and was in a perfectly safe and proper position if the cars had been allowed to remain without interference; that is, if nothing had been done with respect to the brakes.

I. Error is assigned to the admission of the testimony of E. C. Herron who, it is claimed, testified as an expert, when his evidence showed that he was not qualified as an expert. He was a chiropractic doctor and testified to the condition of plaintiff Smith before he was injured and the relation of his hurts to his present condition. He had no license to practice medicine and had received his education as a chiropractic mainly by correspondence.

**Expert Testimony.**

Undoubtedly counsel for plaintiff is correct in his position that Herron did not qualify so as to give an opinion regarding the effect of the plaintiff's injuries upon his physical and mental functions. He testified by deposition which was taken May 20, 1915, at Mena, Arkansas. This deposition was read at the trial which did not begin until October. The defendant was represented by counsel at the taking of the deposition and, of course, knew as well when the deposition was offered

in evidence what it disclosed as to Herron's disquali-
fication as it did after it was read. Yet the deposition
in chief was read without objection and showed the quali-
fication of the witness, his experience and education as
a chiropractor. Witness testified that he was acquainted
with the plaintiff long before the injury, and described
his fine physical condition prior to that time. He ex-
plained the effect upon his movements caused by his
injuries, and described what he seemed to think was the
cause of the trouble; it was the displacement of certain
vertebrae which affected his nerves. This alleged dis-
placement was shown by one of the defendant's expert
witnesses to be absurd and impossible. Herron also
described the general condition of plaintiff and the
condition of his head where it was injured. Occasionally
objections were interposed and in each case they were
sustained or questions withdrawn. At one point in the
reading of the deposition defendant's counsel interrupt-
ed and pointed out the place to which the counsel for
plaintiff might skip and continue to read, and that part
which then was read gives the witness's theory about
the impingement upon the nerves caused by the dis-
location of some joints of the spine; also the effect of
this supposed condition upon the muscles of the throat
and the internal organs. All this without objection.
Many objections appear in the course of the examination
to the form of the questions; these appear to be entered
on the deposition as originally taken, and no exceptions
were saved when the answers to such questions were
read to the jury. Finally, after the cross-examination of
the witness was read at some length, counsel for de-
fendant announced that he was going to move to strike
out every portion of the witness's testimony which
attempted to give an expert opinion, and would point
out specifically the portions which he expected to have
stricken out. The record does not show that any such
designation was made and consequently there was no
ruling as to the admissibility of any specific evidence
which had been offered.

For that reason and for the failure to object in time, the complaint that such testimony was incompetent cannot be heard now. [State v. Marcks, 140 Mo. 1. c. 668-9; State v. Forsha, 190 Mo. 1. c. 326-7; State v. Bateman, 198 Mo. 1. c. 223-4; Hickman v. Green, 123 Mo. 165.]

In reading the deposition, this question occurred: "I will ask you if there is any part of the human body that is not affected by the brain and nerves?" This was objected to because the witness was not qualified as an expert. The objection was overruled and the exception saved. Witness answered that there was no part of the body but what was affected by the brain and nerves. The question was repeated and the objection renewed, whereupon the plaintiff's attorney withdrew the former question and answer and also withdrew the question which had just been asked.

It hardly seems that the defendant, could have been injured by the question and answer even if it had not been withdrawn, because the witness had in effect answered the same and similar questions more in detail throughout his deposition without objection and the present question, to which the objection was made, and the answer added nothing to what he had already said. No other exceptions were saved to the ruling in the testimony of Herron. It is claimed by plaintiff's counsel that the defendant was anxious to have his testimony in for the purpose of ridiculing it as a weakness in the plaintiff's case. The defendant's conduct lends color to that claim. There was no error in receiving the testimony which can be considered here.

II. The appellant claims that the court committed error in permitting a witness to testify to a statement made by Johnson, the conductor, immediately after he learned that the plaintiff was injured, in which he said that he forgot that the men were under the car. Johnson had testified in his examination in chief that no one told him the brakebeam was down and he didn't know either

Contradicting Witness:
Res Gestae.

Weller or Smith had gone under the car to adjust it. On cross-examination he was asked if he didn't come running up to where the plaintiff was caught and say he forgot the men were under the train. He replied that he didn't remember saying that. Witness Cooper then was placed upon the stand, in rebuttal, and testified that at that time Mr. Hull, the engineer, asked Johnson why he turned the air on while the men were under the train, and that Johnson exclaimed, "My God, I forgot it; I didn't know what I was doing."

The position of appellant is that this exclamation was no part of the *res gestae*, a matter not necessary to determine. It was offered for the purpose of contradicting the witness, and appellant claims it was incompetent for that purpose. Two cases are cited by appellant in support of that position. [Koenig v. Union Dep. Ry. Co., 173 Mo. 698; and Wojtylak v. Coal Co., 188 Mo. 260.] In the Koenig case, shortly after a child was killed by a street car, the motorman was asked, "Are you blind to run over a child like that?" and he replied: "I didn't see the child, I was looking at the car coming east." The court held this was not *res gestae* and not admissible for that reason. The motorman had not testified indicating that he saw the child or to any fact which this statement would tend to contradict, and the court said, l. c. 721-22: "This evidence was not offered for the purpose of contradicting the motorman, hence inadmissible for any purpose."

In the Wojtylak case the court held that a statement of that character was not admissible in that case, because it only tended to contradict a statement of the witness which was not pertinent to any issue in the case. [188 Mo. l. c. 288-89.]

In the case of Gordon v. Railroad, 222 Mo. 516, l. c. 531-2, the plaintiff, a switchman, sued for injuries caused by a defective handrail, and was permitted to show that the yard foreman, soon after the injury, had made a statement indicating that he knew of the defective appliance. He had just testified that he examined

the handrail in question an hour and a half after the accident and found it in good condition. His declaration was held to be admissible, because it was inconsistent with his testimony. That case distinguishes the Koenig case, supra, in that the foreman had just previously testified to matters inconsistent with this declaration. Several cases are reviewed by this court in the Gordon case illustrating the principle (L. c. 533-4).

In the case of Hutchinson v. Safety Gate Co., 247 Mo. 71, l. c. 104 a statement of similar nature was admitted in evidence. The only objection to it was that the witness was not examined in relation to the matter while on the stand, but he was afterwards recalled and examined, and then the impeaching statement admitted. The competency of the testimony for the purpose was not questioned.

In this case the statement as offered indicated that Johnson knew the brakebeam was down and that someone was under the car and tended thereby directly to contradict the testimony he had just offered to the effect that he did not know those things. On the authority of the Gordon case the evidence was competent.

III. Appellant claims the court committed error in instructing the jury that if they should find from the evidence that the conductor cut in the air without first warning the plaintiff of his intention to do so, and if they further found that the conductor knew, "or in the exercise of ordinary and reasonable care could and should have known" the plaintiff was under the said car, etc., then he was guilty of negligence.

Imputed Knowledge.

It is asserted that while there was evidence that the conductor knew there were men under the car, there was no evidence on which to base that part of the instruction which authorizes the finding of negligence if by the exercise of reasonable and ordinary care he could and should have known that the men were under the car; that it was a question of actual knowledge.

There was evidence tending to show that the conductor was told the brakebeam was down, and some of this evidence indicates that while he was so informed, and knew the men were going under the car, it would nôt necessarily follow that he knew the men were under the car at the moment the air was cut in. There was also evidence of a "spot" signal which indicated something was wrong that required attention. Other evidence indicates that the train was stopped for some time and, while the conductor was back toward the rear of the train at the time he cut in the air, on account of the spot signal, if it was given, he had reason to know that something was wrong about which it was his duty to obtain definite information. He himself swore positively that he did not know the men were under the car, and there is positive evidence that he was told the brakebeam was down; this would suggest to him that the men probably would be under the train for the purpose of adjusting it. The evidence was entirely sufficient to allow the instruction.

Besides, appellant tried the case on that theory. In instruction numbered 2, and instruction numbered 9, offered by defendant, the jury were told that if the plaintiff went under the car without advising the conductor that the brakebeam was down and that the conductor did not know and "could not have known it in the exercise of ordinary care" then the verdict should be for the defendant.

IV. Appellant with great ingenuity and force insists that the verdict is excessive and the defect cannot be cured by *remittitur*. The argument runs thus:

There was evidence tending to show the plaintiff was guilty of contributory negligence, and the instructions under the provision of the Federal Employers' Liability Act directed the jury to make a proportionate deduction from the actual damages suffered, if they should find such contributory negligence. The amount of recovery

Deduction for Contributory Negligence: Award of Actual Damages Only.

demanded in the petition was $75,000, and the full amount was insisted on in the plaintiff's argument. The verdict was for half that, or $37,500. It is therefore probable that the jury found plaintiff's actual damages at $75,000, and deducted half on account of his negligence. Or they might have found his damages at $50,000, and deducted one-fourth on account of his negligence. But this court has never allowed a verdict for *actual* damages in a personal injury case to stand for more than $25,000. Therefore, the actual damage to plaintiff could not exceed $25,000, and the *remittitur* of $12,500, which the circuit court ordered did not allow for the probable finding that the plaintiff was negligent. The circuit court should have limited recovery to $25,000, actual damages, less a proportionate amount for contributory negligence, but did not. It is impossible to say what the jury might have deducted for contributory negligence if there had been such limit. Therefore, the judgment as reduced to $25,000, is excessive because of the probable contributory negligence, and the excess cannot be cured by *remittitur* because it is impossible to say what proportion the jury might have deducted from the actual damages on that account. An alternative might be found by reducing the judgment one-half, to $12,500.

Appellant cites two cases in support of this position. [Hadley v. Union Pacific Railroad Co., 156 N. W. (Neb.) 765, and Pennsylvania Co. v. Sheeley, 221 Fed. 901.] The Hadley case follows the Sheeley case, holding, as is the rule, that the construction of the Federal Employers' Liability Act by the Federal courts is conclusive upon the State courts. Both these cases hold that it is proper, in case there is evidence of contributory negligence in a suit under the act, to submit such issue to the jury. In the Sheeley case the court held it was not properly submitted to the jury, so that they might apportion the damages on that account. Nevertheless the court found it could correct that defect in the verdict by *remittitur*

In the Hadley case the court first determined from the evidence that the actual damages should not be in excess of $18,000, and then determined that the proportionate amount on account of contributory negligence could not exceed one-fourth of that amount, and ordered a *remittitur* so as to reduce the judgment to $13,500. In each of these cases, therefore, where the amount of the deduction for contributory negligence was uncertain, the court did find it possible to correct any excess by *remittitur*. Appellant suggests that the court in those cases invaded the province of the jury, but if this court follows the Federal case, which we are presumed to do, then any excess in the verdict may be cured by *remittitur*.

However, there is another principle which applies here. That is, all presumptions are indulged in support of a verdict and a judgment. In an attack upon the propriety of a verdict the court must presume that the jury found every fact, of which there was evidence on issues properly submitted to the jury, tending to support the verdict. [Wright v. Green, 239 Mo. 449, l. c. 454; Mfg. Co. v. Insurance Co., 167 Mo. App. 566, l. c. 570.] In this case it may be conceded there was some evidence tending to show the plaintiff was negligent, while other evidence and many of the facts in the situation would lead to the conclusion that he was not negligent in getting under the car and in putting himself in the position in which he got hurt—that he was only pursuing his ordinary duty. Now, if necessary in order to sustain the verdict as rendered, we are bound to presume the jury found that he was not negligent and that the verdict rendered indicates the actual damage which they found he had incurred. This court cannot assume that the jury found any fact, where the evidence is contradictory, which would impair their verdict. It cannot be presumed that they reached a conclusion in regard to any disputed fact which would invalidate the general conclusion shown by the verdict. In that case, if this court finds the verdict

excessive as to an award of actual damages, the excess may be corrected by *remittitur*.

V. It remains to consider whether the verdict is excessive, requiring a *remittitur* as a condition of affirmance.

The plaintiff's head was crushed between the floating lever and the needle beam. His nose was mashed over to one side, the bones of his nose crushed into his face; the bones in the skull were broken into many pieces, and these bones had to be taken out, leaving a space unprotected by bone, an inch and a half long and an inch wide. He suffered with convulsions for several hours until an operation was performed. This indicated pressure upon and injury to the brain. Blood was coming out of his eyes and ears. His suffering for some time was intense.

**Excessive Verdict.**

The permanence of the injury was testified to by several physicians who examined him. There was contradictory evidence as to whether any of the gray brain-matter oozed out at the time of the injury, but the evidence seemed to be uniform that his brain could be injured, and there was evidence that it was injured, by the blow, even if there was no rupture of the covering of the brain. His vision was impaired and the evidence indicates that he could not turn his eyes laterally and could only focus them on an object directly in front; he was unable to read except for a few moments at a time. A discharge came from his nose; there was a suppurative condition there, accompanied by a disagreeable odor. He had an ataxic walk and fibrillary tremors ran over his body at times; this is explained by the physicians as being entirely involuntary and incapable of similation. His eyes fluttered on account of his inability to focus them on a direct object without moving his head, and that was because the nerve supply was affected with indications that the muscles which manipulate the eye were atrophied from diease. He was continually restless and nervous, with twitching and fidgeting,

even when he was asleep. He would squirm around and wring his hands when engaged in conversation. On a test of his equilibrium when he closed his eyes and tried to stand erect he had a tendency to fall backward to the left side. He lifted his legs much higher in walking than a normal man does, indicating ataxia. He did not sit down or move like a normal individual. In stooping over, he had a sensation that his brain was dropping out through the hole in his forehead. This is characterized by the physicians as a delusion due to pressure on the brain when he stoops.

The testimony of several physicians was that this physical condition would grow worse instead of better; that in no event could he ever recover his normal condition. There was some evidence offered by defendant to the effect that he would to some extent recover.

Before plaintiff was injured he is described by the witness as being in perfect physical condition; he was an athelete and had a naturally quick mind. He was apt at school. He began working for himself at fifteen years of age as a clerk in the commissary department of a planing mill, and did the work of an ordinary clerk. He learned unusually fast, acquired a limited speaking knowledge of the German language; took great interest in the literary exercises at school; he had some education in telegraphy.

The evidence tended to show that his physical condition had affected his mind, particularly his memory. The physician of the Kansas State Penitentiary and other physicians subjected him to what is termed the Binet-Simons test, for the purpose of determining whether or not he was deficient in certain faculties of mind. Those tests are set out in the evidence, and the result was reached that his mind, by all those tests, was about equal to that of a normal child ten years old. His memory of recent events was very much impaired. The tests to which he was subjected by the physicians

indicated that condition of his memory, his association and continuity of ideas, his perception, his conception, judgment and will. His faculty of association of ideas, that is, following one idea after another in an intelligent manner, was not that of a normal man. He was extremely slow and labored in answering questions. It was the opinion of an expert that his memory of past events prior to his injury was better than recent ones and showed that his memory must have been good before his injury. Appellant argues that his deposition and his evidence, set out in the record, shows no impairment of his mental faculties. But his manner of delivering that testimony does not appear in the record, and one physician called attention to his demeanor in court as showing the impairment of his mind and muscular control.

There was considerable evidence offered by defendant indicating that his injury was not as serious as the testimony offered by plaintiff would indicate, but there was sufficient evidence by which the jury might very properly have found that his physical and mental condition was impaired beyond any possible recovery to anything like a normal state, and that his capacity for earning a living and enjoying life were reduced to a very low point. He was injured January 10, 1914, and at the time of the trial in October, 1915, nearly two years later, he had been unable to earn anything. A sufficient time had elapsed so that the permanence of his injuries or otherwise were capable of approximate ascertainment.

Appellant asserts that this court has never allowed a damage for personal injuries in excess of $25,000, and states it as if that were a definite rule. There is no definite rule laid down by this court in any case; each individual case has been determined upon its own facts.

The case of Gordon v. Railroad, 222 Mo. 516, is mentioned as the extreme case in which this court permitted the highest possible damage for personal injuries, and that is where a verdict for fifty thousand

dollars was cut down by the circuit court to thirty-five thousand dollars and by this court to twenty-five thousand dollars. In that case the plaintiff's injuries resulted in total paralysis in his lower extremities. He finally died of the injury before the decision was reached in this court.

The plaintiff in this case was 24 years of age and earned about a hundred dollars a month; the plaintiff in the Gordon case was 29 years of age and earned about ninety dollars a month. In the Gordon case the injury occurred in 1904, and in this case in 1914, about ten years later. Twenty-five thousand dollars in 1904 was a much larger sum in purchasing power than that sum in 1914. While the injury in the Gordon case was probably more painful and more serious in its results, we are not prepared to say that the verdict for $25,000 by the trial court was excessive.

In the recent case of Turnbow v. Kansas City Railways Company, decided at the last term of this court, a verdict for $30,000 was affirmed on condition of a *remittitur* of $5,000. The injury was the loss of both legs, possibly not as serious as the injury in this case.

Respondent cites many cases from other States where much larger verdicts for injuries no more serious than that suffered by the plaintiff have been upheld.

The judgment is affirmed. *Roy, C.,* absent.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.