# EMMA E. MAYNE v. KANSAS CITY RAILWAYS COMPANY, Appellant.

### Division Two, April 7, 1921.

1. **PLEADING:** General and Specific Injuries: Resultant Damages: Natural and Necessary. When the petition alleges special damages in a personal injury case, the proof must be limited to the special damages pleaded. Where a specific result necessarily follows from an alleged injury it is not necessary to plead it, but where it is the natural but not the necessary result of the injury it must be pleaded in order to admit evidence of it. Also if an allegation of damage contains a general term in describing what follows the injury, then any result coming within the content of that term may be proved without specific allegation; and if the petition contains any allegation of a general nature which may be said to embrace within the general term a resultant damage sought to be proven, and defendant is not satisfied with the general allegation, he should move to make more specific.

2. ———: ———: ———: ———: Injury to Pelvic Cavity: Impaired Functions: Child Birth. Where the petition alleges that the bones surrounding the pelvic cavity were broken and crushed, and the organs within the cavity were crushed, and after describing the broken condition of the bones and the dislocation and rupture of the ligaments alleges that "the functions of all of which organs have been seriously and permanently impaired," it contains an allegation of an injury in such general terms as to authorize proof of plaintiff's inability to give birth to a child, since one of the functions of the organs so impaired was child-bearing, and inability to bear children is a necessary result of a permanent impairment of those organs.

3. **DEPOSITION:** Absence from State: How Proven. The facts which will authorize the reading of a deposition may be established by the testimony of deponent or the certificate of the officer taking the same, or if deponent is gone out of the State, by additional proof that his present duty kept him in another State.

4. ———: ———: In Military Service. The deposition of a citizen of this State who deposed that at the time it was taken he was in the military service of the U. S. Army and stationed in another State, had been for six months and had not been discharged, and knew not when he would be able to return to his home in this

State, although its date is not so stated as to determine how long it was taken before it was offered. in evidence, is properly admitted in evidence, especially where the attorney for the party offering it testified that he had had correspondence with deponent at the military camp and was willing for opposite counsel to see the correspondence.

5. ———: ———: **Present at Place of Trial.** After a deposition of a witness was admitted in evidence on the ground that he was absent from the State, it was discovered that he was at the place of trial, and he was then sworn for the·purpose of allowing the opposite party to cross-examine him, and such offer was declined. *Held*, that there is no reversible error in allowing the deposition to stand, because said opposite party was not harmed by it.

6. **ARGUMENT TO JURY: Comment on Evidence.** Where evidence to show plaintiff's physical condition in a certain particular is competent under the pleadings, comment upon such condition in the argument of her attorney to the jury is not improper.

7. ———: ———: **Mental Suffering.** Mental suffering as an incident to personal physical injury is always an element of damage to be considered by the jury, ·and it is unnecessary to make specific proof of mental suffering, because it necessarily arises when the nature ·and extent of the physical injury is shown; and where such injury is shown, it is not error for plaintiff's counsel, in his argument to the jury, to comment on her mental suffering.

8. **NEGLIGENCE: Res Ipsa Loquitur: Passenger.** In determining whether the doctrine of *res ipsa loquitur* applies to a case, it does not matter whether the injured party was a passenger on defendant's street car which injured her.

9. ———: ———: **When Applicable: Case for Plaintiff.** When the instrumentality which causes an injury is within the control of and operated by defendant, and moves or is operated in such a way that such motion or operation would not have happened except for some defect or negligent act, and injury results, the doctrine of *res ipsa loquitur* applies, and a plaintiff suing for an injury so caused has only to show control of the instrumentality by the defendant and its usual movements. It is then for defendant to explain, if it can, the casualty, so as to exclude negligence on its part.

10. ———: ———: ———: ———: **Erratic Street Car.** As a street car was 'being backed, the hind wheels went as they were intended to go and the front wheels veered off by reason of a split switch and caused the front end of the car to swing around and strike plaintiff standing on a sidewalk, the movement being one that

could not have happened except for some defect in the car or track or some negligence in its management, and the machinery and all the appliances being peculiarly within the knowledge of defendant. *Held,* that the defendant was charged with the burden of explaining the casualty; and if by its testimony it only showed that the track, the car and the wheels were in good condition, but made no showing of what caused the split switch and the consequent erratic movement of the car, an instruction authorizing a recovery by plaintiff, if technically incorrect because it made reference to plaintiff as a passenger, is not reversible error.

11. **EXCESSIVE VERDICT:** $20,000. Where plaintiff's injuries were unusual in severity and painfulness, rendering her a cripple for life and incapable of normal activities and life's most fruitful enjoyments, a verdict for $20,000 is not excessive.

Appeal from Jackson Circuit Court.—*Hon. Willard P. Hall,* Judge.

AFFIRMED.

*L. T. Dryden* for appellant.

(1) The court erred in admitting evidence to the effect that one of the results to the respondent from the injuries alleged to have been received by her, was a lack of the regular courses of nature in her female organs. Hall v. Coal Co., 260 Mo. 351; Johnson v. Railroad, 192 Mo. App. 8; Shafer v. Harvey and Dunham, 192 Mo. App. 502; Martin v. Kansas City Rys. Co., 204 S. W. 589; Wesner v. Railroad, 177 Mo. App. 117; Glasgow v. Railroad, 191 Mo. 347; Smart v. Kansas City, 208 Mo. 162; Taylor v. Railroad, 185 Mo. 239; Baldwin v. Kansas City Rys. Co., 218 S. W. 955. (2) The court erred in admitting evidence as to the probable ability of the respondent to give birth to a child. Authorities cited above; Western Union Tel. Co. v. Cooper, 10 Am. St. 772; Pittsburgh Railroad Co. v. Story, 63 Ill. App. 239; Atchison Railroad Co. v. Chance, 57 Kan. 40; Railroad Co. v. Douglass, 69 Tex. 694; Augusta Railroad Co. v. Randall, 85 Ga. 297. (3) This case should be reversed because of highly improper argument of respondent's counsel in his closing

argument to the jury, to which timely objections were made and exceptions saved. Western Union Tel. Co. v. Cooper, 10 Am. St. 772; Pittsburgh Railroad Co. v. Story, 63 Ill. App. 239; Atchison Railroad Co. v. Chance, 57 Kan. 40; Railroad Co. v. Douglass, 69 Tex. 694; Augusta Railroad Co. v. Randall, 85 Ga. 297. (4) The court erred in admitting, over the strenuous objection of the appellant, the respondent to offer in evidence the deposition of Hugh Miller. Heinbach v. Heinbach, 262 Mo. 69; O'Brien v. Transit Co., 212 Mo. 59; State v. Miller, 263 Mo. 326; Dubowsky v. Binggeli, 184 Mo. App. 364; Schmitz v. St. Louis, I. M. & S. Ry. Co., 46 Mo. App. 380. (5) The court erred in giving Instruction P-1. Pointer v. Mountain Ry. Const. Co., 269 Mo. 104; Nolan v. Met. St. Ry. Co., 250 Mo. 602; Nellis on St. Railways, secs. 258, 259. (6) The verdict in this case is grossly excessive and so much so as to require a reversal. Henson v. Kansas City, 210 S. W. 13; 6 Thompson on Negligence, sec. 7355.

*E. C. Hamilton* for respondent.

(1) Appellant cannot be heard to complain of testimony showing impairment of the functions of childbearing or of a lack of the regular course of nature in her female organs. (a) Because the petition alleges injury to the female organs and resulting impairment of function. Perrigo v. St. Louis, 185 Mo. 289; Brake v. Kansas City, 100 Mo. App. 616; McRay v. Met. St. Ry. Co., 125 Mo. App. 570; Patridge v. Boston Ry Co., 184 Fed. 211; Doster v. Ry. Co., 158 S. W. 441. (b) Because the evidence conclusively shows, and because it is a matter of common knowledge, that the chief functions of the organs within the pelvis injured and impaired in this case are essentially those of procreation with the accompanying process of menstruation. (c) Because appellant failed to avail itself in the trial court of the provision of Sec. 1846, R. S. 1909, which prescribes the way, and the only way of preserving for ap-

pellate review the complaint of a variance between the pleading and the proof, namely, the filing of an affidavit of surprise. Sec. 1846, R. S. 1909; Mellor v. Mo. Pac. Ry. Co., 105 Mo. 470; Fisher v. Real Estate Co., 159 Mo. 567; Olive Street Bank v. Phillips, 179 Mo. App. 488; Cossitt v. Railroad Co., 224 Mo. 110; Thornton v. Am. Zinc Co., 178 Mo. App. 42, 46; McPike v. Motor Car Co., 213 S. W. 908; Ridenhaur v. K. C. Cable Ry. Co., 102 Mo. 285; Wright v. K. C. Terminal Railroad Co., 195 Mo. App. 486. (2) Appellant cannot be heard to complain of misconduct of counsel in the argument of the case for the reasons: (a) Defendant brings up only a fragment of the argument complained of, thus failing to show the sequence, the connection and the effect of the argument as a whole. Lilly v. K. C. Rys. Co., 209 S. W. 972; Norris v. Railroad, 239 Mo. 721; Wendler v. Furnishing Co., 165 Mo. 542. (b) For the reason that error will not be presumed from an unfinished interrupted remark in argument. Wagner v. Const. Co., 220 S. W. 899; Baird v. Larrabee Flour Mills, 220 S. W. 992. (c) For the reason that the defendant's motion for a new trial failed to specifically point out to the trial court the language of the argument complained of in order that the court *nisi* might have corrected the error, if such there were, before appeal. Sweet v. Maupen, 65 Mo. 68; Zahn v. Royal Fraternal Union, 154 Mo. App. 83; Lynch v. C. & A. Railroad, 208 Mo. 42; Honeycutt v. St. Louis Ry., 40 Mo. App. 678; Stone v. Wolfskill Bros., 59 Mo. App. 433. (d) For the reason that mere objections to argument are insufficient unless accompanied by request for the court to rebuke counsel. State v. Phillips, 233 Mo. 307; Norris v. Railroad, 239 Mo. 720; Wagner v. Const. Co., 220 S. W. 899. (3) Appellant having failed to avail itself of an opportunity to cross examine witness Miller after the reading of his deposition, cannot be heard to complain of the deposition's admissibility in evidence, especially when the evidence disclosed by it was only cumulative in nature. O'Keife v. Railway Co., 124 Mo. App. 623; McFarlan v. Accident

Assn. Co., 124 Mo. 222; Benjamin v. St. Ry. Co., 133 Mo. 287. (4) In view of the doctrine of *res ipsa loquitur* there was no error in the giving of plaintiff's Instruction P.-1. Thompson v. Railroad, 243 Mo. 353; Burns v. Railroad, 176 Mo. App. 338. (5) The verdict is in no sense excessive, considering the horrible nature and permanency of plaintiff's injuries especially in view of the increased cost of living and the decreased purchasing power of money at the time the verdict was rendered. Greenwell v. C. M. & St. P. Ry. Co., 224 S. W. 410; Wagner v. Const. Co., 220 S. W. 899; Myers v. City of Independence, 189 S. W. 816; Barry v. Cape Girardeau, 132 Mo. App. 189; Stottler v. Railroad, 200 Mo. 148; Roe v. Met. St. Ry. Co., 131 Mo. App. 134.

WHITE, C.—The appeal is from a judgment for $20,000 recovered by the plaintiff as damages on account of personal injuries.

Lexington Street, Independence, runs east and west. It is intersected by Orange Street running north and south. The defendant's street railway tracks run along Lexington Street; a track comes in from the north on Orange Street, and turns into a track on Lexington Street. After turning from Orange into Lexigton Street, a car stands to receive passengers in front of the post office, which is on the north side of Lexington Street.

On December 24, 1917, a car of the defendant came from the north on Orange Street and turned the curve into Lexington Street, heading towards the west. A number of persons, including the plaintiff and her sister, were waiting at that point in front of the post office to take passage on a car going west. Some of those persons immediately boarded the car. It was then announced by the conductor in charge that the car would not go on west. Such passengers as had boarded the car got off. The switch connecting the track coming in from Orange Street with the Lexington Street track was thrown, and the motorman attempted to back the car eastward on the track on Lexington Street. The rear

trucks of the car passed on east, but the switch then became "split," as it was termed, so that the front trucks of the car, instead of going east, turned northward as if to pass on to the track on Orange Street. That caused the front end of the car to swing around in a sweep toward the curb on the north side of Lexington Street and against the crowd of perons waiting to take passage. The end of the car, swung so far, the evidence shows, that it struck an iron post which stood between the curb and the sidewalk at the northwest corner of Lexington and Orange. It struck a number of persons, knocking several down, and three women at least had to be picked up by other persons. The plaintiff's sister was dragged from under the car when it stopped; the plaintiff was struck and crushed over against the iron post mentioned, or against the curb. According to the evidence, when the car stopped the fender either was against the post, or very close to it. The fender was injured and had to be removed. Whether its removal was made for the purpose of getting the persons from under it, or whether the car could not proceed with it in that condition, does not appear from the evidence.

The number of persons at the point waiting to board the car was variously estimated at from a dozen to thirty. A number of them testified, and all substantially to the same effect, as to the movement of the car in taking the split switch, the swinging around of the front, and the crashing into the throng of people. Among the witnesses was the motorman in charge of the car, whose testimony was offered by the plaintiff. The defendant offered evidence to show that the wheels of the car and other parts were in good condition. The evidence tended to show that the split switch might have been caused by various means, by a defective wheel, broken flange, obstruction in the track, or too rapid backing of the car.

The injuries of the plaintiff were of the most serious character. Her hip was torn from the socket; the bones in the region of the hip were fractured in five or six places. The technical names of those various bones were given and the condition explained by surgeons who at-

287  Mo.—16

tended the patient and took X-Ray pictures of them. The bones were thrust out of place and grew together again in a misplaced condition, so that the result was an abnormal contraction of the pelvic cavity and the birth canal. It was testified that it would afterwards be impossible for the plaintiff to give birth to a normal child. Some of the bones overlapped, so that there was painful and defective locomotion. One fragment of bone was thrust downward, so that it was impossible for her to sit comfortably except upon a pillow; other fragments were thrust into the pelvic cavity, causing painful menstruation. The expert evidence showed that is was impossible properly to set the bones; the only thing that could be done was to reset the hip joint which had been torn from its socket, There was no way known to the surgeons by which the broken and crushed bones in that region could have been replaced in their normal condition. Such injuries, the surgeons said, usually were fatal, although the plaintiff survived. The movement of the plaintiff's right leg was impaired, and when she walked, one with hand on her hip could feel the click-click of the bones. She walked painfully and with crutches. She was in a sanitarium undergoing treatment for about ten weeks, and afterwards was enabled to move around with difficulty. At the time of the trial, some fourteen months after the injury, she still went on crutches a great part of the time, used her muff or a pillow to sit on, was able to do very little, and only the lightest housework, whereas before her injury she was in good health, and did all her own housework. It was the opinion of physicians that her injury was permanent, with no possibility of any substantial relief. No attempt was made by the defendant to minimize the injuries which she was shown to have suffered.

I. The appellant asserts that the trial court erred in allowing the plaintiff to prove her inability, after the accident, to give birth to a child. The allegations of the petition relating to the nature of the injuries received are as follows: " The

Child-
Bearing.

lower part of her body about the hips was crushed, the right pubic bone fractured, the left pubic bone fractured, the right ischium was broken, the left ischium broken, and the back of her hips so mashed and crushed as to tear loose the right osinominata from its articulation with the sacrum; the left hip was torn, wrenched and dislocated, resulting in a rupture, strain and wrench of the ligaments thereto attached; the organs within the cavity of the pelvis were crushed and injured, including the bladder, the functions of all of which said organs have been seriously and permanently impaired; that the tender nerves, blood vessels and tissues within the pelvis, and surrounding and adjacent to said injured parts have been torn, lacerated and injured, and their functions permanently impaired; that she has sustained a lasting and permanent shock to her whole physical and nervous system, which has been shattered, wrenched and permanently impaired."

It is argued that these allegations were not sufficient to allow the introduction of such evidence, because there is no specific mention of that particular impairment in the injured organs. The case of Hall v. Coal Co., 260 Mo. 351, is cited by appellant in support of the position, where it is held that when the petition alleges special damages in a personal injury case, the proof must be limited to the special damages pleaded; that where a specific result necessarily follows from a stated injury it is not necessary to plead it, but where it is the natural but not the *necessary* result of the injury it would have to be pleaded in order to admit evidence of it. As an illustration used in the Hall Case, l. c. 373, an injury to the lungs might result in pneumonia, but not necessarily so, and such result would have to be pleaded before it could be proved.

Some uncertainty appears in some of the cases in the use of the expressions "general damages" and "special damages." This arises from confusing the facts constituting a specific injury with the resultant damages which flow from it. If an allegation of dam-

age contains a general term in describing what follows the injury, then any result coming within the content of that term might be proven without specific allegation. For instance, an allegation that the injury caused the lung to be diseased would let in evidence of pneumonia. If the defendant in such case were not satisfied with the pleading he could move to make more specific. This is particularly explained in the Hall Case, for instance, l. c. 371, it is said: " It will be noticed that the petition fails to specifically allege impotency, neither does it contain an allegation of a *general nature* which might be said to embrace within its terms the condition of impotency."

The opinion then goes on to point out that in the petition in that case the defendant could not help the situation " by filing a motion to make more specific, because the petition contains no *general terms* which would by being made more specific uncover the hidden secret that impotency resulted from the injury."

Applying that principal to this case, to simply allege that the bones surrounding the pelvic cavity were broken and crushed, and the organs within the cavity crushed, is a description of the facts constituting the injury; it would not necessarily follow from that statement of the injury that the woman would thereafter be unable to give birth to a child; but the allegation instead of stopping with the description of the injury goes on to state the results in general terms; the allegation, after describing the broken condition of the bones and the dislocation and rupture of the ligaments, then alleges: " the functions of all of which organs have been *seriously and permanently impaired."* One of the functions of these organs so impaired was child-bearing. If the defendant desired a more specific definition of the particular impairment meant, a motion to make more specific was available. Or, if after describing the nature of the injury and the impairment of the organs the plaintiff had gone on and specifically had enumerated the particulars in which the organs were impaired, she

probably would not have been allowed to prove any other than these particulars enumerated. Recent cases have considered this subject and support the position taken here. [Ganz v. Met. St. Ry. Co., 220 S. W. 490, l. c. 496; Martin v. Kansas City Rys. Co., 204 S. W. 589, l. c. 590; Bergfeld v. Dunham, 202 S. W. 253, l. c. 254.]

The case of Hibbler v. Kansas City Railways Co., 237 S. W. 1014, decided at this term of court, differs from the case under consideration in that very particular. In that case there was an allegation of the *impairment* of functions of certain organs; it was held improper to show a *destruction* of such organs, making it necessary to have them removed by operation, because destruction is not embraced within the general term impairment. The evidence was not improper and comes within the general allegations of resultant injuries.

II. Error is assigned to the admission of the deposition of witness Hugh Miller. The deposition was offered by the plaintiff and read in evidence. Miller testified that his home was with his parents in Independence, but at the time his deposition was taken he was in the military service in the U. S. Army and stationed at Camp Funston; had been there for six months and had not been discharged. He didn't know when he would be able to come back to Independence. The date of the deposition is not stated so as to determine how long it was taken before it was offered in evidence. The plaintiff's attorney, Mr. Hamilton, was sworn and testified that he had had correspondence with the witness at Camp Funston and he was willing that the counsel on the other side should see the correspondence. On that showing the deposition was read in evidence over the objection of the defendant.

The statute, Section 5467, Revised Statutes 1919, provides that depositions may be read in evidence "if the witness resides or is gone out of the State; . . . if he reside in a county other than that in which the trial is held, or if he be gone to a greater distance than

*Deposition.*

forty miles from the place of trial without the consent, connivance or collusion of the party requiring the testimony.''

The facts which would authorize the reading of the deposition may be established by the testimony of the deposing witness or the certificate of the officer taking the same. It was held by this court in the early case of Gaul v. Wenger, 19 Mo. 541, that the mere statement of the witness in his deposition that he was going to leave for Europe tomorrow would not be conclusive so as to authorize his deposition to be read, in the absence of other proof, but that slight evidence might be offered to show that the witness had carried out his purpose so as to make the deposition competent. [See, also, Moudy v. Dressed Beef and Provision Co., 149 Mo. App. 413, l. c. 422.] In this case the witness not only said he was going away, but that he was stationed away. There was additional positive proof that his present residence and duty kept him in another State, at Camp Funston. If he should return to Independence it would be because of a leave of absence. We think the evidence justified the court in admitting the deposition.

However, another complication arose; after the deposition was read it was discovered that the witness was in Independence at the time. Mr. Hamilton, attorney for the plaintiff, was sworn and stated that he was misled as to the whereabouts of the witness, didn't know he was in the city, and he was ready to withdraw the deposition and allow the witness to testify. Mr. Dryden, counsel for defendant, declined to make any statement. The witness then was sworn and it was suggested by the plaintiff's counsel that the defendant's counsel cross-examine him. Defendant's counsel declined to cross-examine him unless he was examined in chief. Thereupon the plaintiff's counsel had him testify giving his name, and upon objection by defendant's attorney examined him no further. Defendant's counsel declined to cross-examine him.

From the fact that the deposition was competent when offered, the question arises as to whether it would

be rendered incompetent by showing subsequently that the court was in error in the first place in ascertaining the facts as to its competency. It is unnecessary to decide that question, because the defendant could not possibly be harmed by the deposition; the witness himself was present and placed upon the stand for the purpose of allowing the defendant to cross-examine him. Defendant had every advantage in the situation as it stood. He could cross-examine the witness at length and with particularity as to everything he had said in his deposition, and if there were any misstatements in that deposition they could have been corrected. There was no reversible error in allowing the deposition to stand.

III. Error is assigned to the action of the trial court in permitting—over the objection of defendant's counsel —plaintiff's counsel in his argument to the jury, to comment upon the inability of the plaintiff to bear children, and her mental suffering on account of such condition. The comment upon the fact was not improper since the evidence of that condition was properly admitted, as shown above. The objection to the argument was that it made reference to a matter, mental suffering, without the issues. Mental suffering as an incident to personal physical injury is always an element of damage to be considered by a jury, and it is unnecessary to make specific proof of mental suffering because it necessarily arises when the nature and extent of the physical injury is shown. [Brown v. Hannibal & St. Joe Ry. Co., 99 Mo. 310, 1. c. 319; Wingate v. Bunton, 193 Mo. App. 470; Maguire v. St. Louis Transit Co., 103 Mo. App. 476.] The comment was entirely within the scope of the issues and the evidence.

*Argument to Jury.*

IV. The appellant complains of error in the giving of instruction P-1, on behalf of the plaintiff. This was the principal instruction given for plaintiff, and required the jury to find: "That if the plaintiff, Emma E. Mayne, had gone to said place intending to board one of defendant's street cars, and to become a passenger thereon, and if she was ready, able and

*Instruction.*

willing and intended to pay her fare for passage, and if the place where she went to board said car was near the regular stopping place for taking on such passengers and while she was in the exercise of ordinary care for her own safety,'' etc., then follows the requirements to find the movement of the car as indicated by the evidence, and the instruction proceeds:

''Then you are instructed that such an occurence creates a presumption of negligence for which defendant is liable, and the burden is upon the defendant to disprove such presumption by a preponderance of the evidence.''

It is claimed by appellant that this is not a *res ipsa loquitur* case, and that the instruction is erroneous in declaring the plaintiff's case is made out by showing the injury took place by the movement of the car, without showing specific negligence. It is further urged that the instruction is faulty, because it assumes that the plaintiff was a passenger.

As to the last objection, the instruction only requires the jury to find that plaintiff went to the usual place for receiving passengers intending to become a passenger. It neither assumes that fact nor requires it to be found; nor does it matter whether the plaintiff was a passenger or not in determining whether the doctrine of *res ipso loquitur* would apply.

Where the instrumentality which causes and injury is within the control of and operated by a party, and moves or operates in such a way that such motion or operation would not have happened except for some defect or negligent act, and injury to some person results, then the doctrine of *res ipsa loquitur* applies, and a plaintiff suing for an injury so caused has only to show control of the instrumentality by the defendant and its usual movements. It is then for the defendant to explain, if it can, the casualty, so as to exclude negligence on its part. [Ash v. Woodward Printing Co., 199 S. W. l. c. 997; Blanton v. Dold, 109 Mo. l. c. 75; Thompson v. Railroad, 243 Mo. 336, l. c. 354; Gibler v. Railroad, 148 Mo. App. 475, l. c. 484.]

In the Thompson Case, 243 Mo. l. c. 354, it is said: "This maxim (the act speaks for itself) is founded upon the feeling that every apparent wrong resulting in injury to another which may only be palliated or explained by facts within the peculiar knowledge of the perpetrator, carries with it the proof of its wrongful character and places upon him the burden of offering a just excuse."

Here the street car took a most unexpected course, the back wheels going as they were intended to go and the front wheels veering off by reason of the split switch and causing an unusual and dangerous movement of the car. This was a movement that could not have happened except for some defect in the track or car, or some negligence in its management. The machinery and all appliances were peculiarly within the knowledge of the defendant and the defendant was charged with the burden of explaining. Defendant introduced several witnesses for the purpose of showing that the track, the car, and the wheels were in good condition, but offered no evidence to show exactly what caused the split switch and the consequent erratic movement of the car. Therefore the instruction if technically incorrect was harmless.

V. Complaint is made that the verdict is excessive. The injuries were unusual in severity and painfulness, rendering the plaintiff a cripple and more or less incapable of normal activities and enjoyment for life. This court has in recent cases allowed verdicts for persons injured to stand for amounts larger than the amount recovered here where the injuries were no more aggravated than these. [Smith v. Kansas City So. Ry. Co., 279 Mo. 173.]

Verdict.

The judgment is affirmed. *Railey* and *Mozley, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.