## WILLIAM R. HILGEDICK, Appellant, v. GUSTAVE A. GRUEBBEL.

### Division One, November 30, 1912.

1. **EJECTMENT: Evidence: Agreed Boundary Line: Correct Location.** Where the adjoining owners of land agreed upon a boundary line, it is immaterial whether that line as establishd by the surveyor was correctly located. But where it is disputed that there was an agreed line, testimony to show that the fence, which a witness testifies was built in pursuance of the agreement, was crooked and varied in and out, is competent to show there was no agreed line.

2. ——: **No Agreed Boundary Line: No Adverse Possession.** Where there was no agreed boundary line and he who was in possession of the small strip did not claim adversely to the title-owner, the finding should be for such owner.

3. ——: **Survey: Fence: For Purposes of Convenience: Instruction.** Where a survey was made establishing a boundary line between two farms, and the only issue in the case is whether the fence thereafter built was placed on that boundary line, and there is no issue in the case of the purpose for which the fence was built, an instruction telling the jury that if they find that such fence was built for "the purpose of convenience," etc., is not error, nor misleading, since the words could have meant no other purpose than the one for which lands are usually fenced, namely, to inclose them.

4. ——: **Verdict of Jury: Conclusive.** Where the contest in ejectment for two small strips of land was submitted to the jury in proper instructions, and there was substantial evidence to support the theory of either side, the Supreme Court will affirm the judgment.

Appeal from Warren Circuit Court.—*Hon. James D. Barnett*, Judge.

AFFIRMED.

*Kurt Von Reppert* and *Henry Higginbotham* for appellant.

(1) Adjoining owners of land may agree upon the division line between their premises and each owns

up to the agreed line as fully as if it were a natural boundary or their respective deeds called for it. If the agreement is proved according to the rules of law governing it and if possession has been held under such agreement for the period prescribed by the statutes, the law will not suffer it to be disturbed, even though there was no agreement in the beginning. Brummell v. Harris, 148 Mo. 430; Barnes v. Allison, 166 Mo. 96; Hedges v. Pollard, 149 Mo. 216; Atchison v. Pease, 96 Mo. 566; Jacobs v. Moseley, 91 Mo. 457; Kreidler v. Milner, 99 Mo. 145; Shadd v. Sharp, 95 Mo. 573; Reynolds v. Hood, 209 Mo. 611. Possession and use up to a boundary line are evidence that there was an agreement to establish the line not only to corroborate other evidence of such agreement, but even if there be no such evidence. It is only necessary that it continue long enough to indicate that the adjacent landowners knew it. Brummell v. Harris, 148 Mo. 430; Stumpe v. Kopp, 201 Mo. 423; Hedges v. Pollard, 149 Mo. 226; Coleman v. Drane, 116 Mo. 387; Kreidler v. Milner, 99 Mo. 145; Jacobs v. Mosely, 81 Mo. 462; Shadd v. Sharp, 95 Mo. 578; Blair v. Smith, 16 Mo. 273; Turner v. Baker, 64 Mo. 218; Ernstling v. Gleason, 137 Mo. 594. (2) Where one of two joint land proprietors takes and holds possession up to a fence which he supposes is on the true line, claiming to the fence, his possession is adverse as to all lands within his inclosure. In such case it makes no difference that he was mistaken as to the location of the true line, nor does it make any difference that he did not intend to invade his neighbor's rights. The fact that he claims to the fence, not simply to the line when ascertained, is sufficient and will constitute disseisin. The burden of bringing the case within the exceptions to the rule of a possession for the period of limitation not being adverse between adjoining owners because always held subject to a subsequent ascertainment of the true line is on the party claiming that the posses-

sion was not adverse, and such party must clearly show the existence of such qualified claim to possession at some time prior to a ripening of title by limitation. Hedges v. Pollard, 149 Mo. 224; Battner v. Baker, 108 Mo. 311; Davis v. Braswell, 185 Mo. 501. Conflicting testimony and vague or uncertain conversations, occurring after the rights of the party in possession had been fixed by possession under Statutes of Limitation, are not sufficient to reduce the character of the possession or divest rights so acquired. Hedges v. Pollard, 149 Mo. 216; Lemmons v. McKinley, 162 Mo. 531; Stumpe v. Kopp, 201 Mo. 423; Davis v. Braswell, 185 Mo. 576; Hanlon v. McManus, 100 Mo. 124; Cole v. Parker, 70 Mo. 377; Turner v. Baker, 64 Mo. 218. (3) The evidence elicited on cross-examination by respondent of witness Ulfers with reference to the manner of the survey made by Biglow, is wholly immaterial and prejudicial to the appellant, for the reason that it is wholly immaterial whether Biglow surveyed the boundary line between the respective grantors of appellant and respondent correctly and located the correct or true division line between their respective adjoining lands on the question as to whether or not there was a prior agreement between Hyronimous Ulfers and Rudolph Dennert, Sr., grantors, respectively, of appellant and respondent, to abide by the line established by the survey of Bigelow. (4) There is no evidence that Hyronimous Ulfers and Rudolph Dennert, Sr., erected the old fence in controversy for the purpose of their convenience only. It is axiomatic that instructions should only be given when there is evidence in the record upon which to base them. Dee v. Nachbar, 207 Mo. 680. (5) The verdict of the jury is the result of bias, passion, prejudice or mistake on their part. The jury disregarded the instructions of the court and the uncontradicted evidence in the case,

Spohn v. Railroad, 87 Mo. 74; May v. Crawford, 150 Mo. 505; Lenick v. Railroad, 118 Mo. App. 611.

*Emil Roehrig* and *Jesse H. Schaper* for respondent.

WOODSON, J.—This is a suit in ejectment instituted in the circuit court of Warren county, by the plaintiff against the defendant, to recover the possession of two small V-shaped tracts of land in United States Survey numbered 758, situate in township forty-five, range one, Warren county, Missouri, particularly described in the petition. Said tracts of land are situate along the boundary line separating the lands of plaintiff and defendant.

The petition is in conventional form, and the answer is a general denial. A trial was had before the court and jury, which resulted in a verdict and judgment for the defendant, and the plaintiff duly appealed to this court. The respondent is not represented here, and the record presented to this court is so poorly gotten up and so indefinite that it is almost impossible for us to find heads or tails of the case.

The appellant does not claim that he has the paper title to the land in controversy, but bases his right to a recovery, first, upon an agreed boundary line established by the grantors of both appellant and respondent in the year 1879; and, second adverse possession under color of title. The respondent interposed three defenses: First, that he had the paper title to the land in controversy; second, a denial of adverse possession; and, third, a denial of the agreed boundary line.

In order to establish the appellant's case he offered as a witness J. A. Ulfers, who testified in substance that he was sixty-eight years of age; that he was reared in Warren county, and lived from 1847 to 1884 on land of appellant, with his father, Hyroni-

mous Ulfers, who died about the year 1895; that he
was familiar with the tract of land immediately east
of appellant's; that ever since 1870 Rudolph Dennert,
Sr., owned and occupied the latter tract, which now
belongs to the appellant; that Rudolph Dennert, Sr.,
died about the year 1886; that in the year 1878 or 1879,
Hyronimous Ulfers, the father of the witness, and Ru-
dolph Dennert, Sr., wishing to build a fence between
their farms, and not knowing the exact boundary line,
agreed to have a survey made thereof and agreed upon
James Biglow, a surveyor of St. Charles county, to
make the survey, and agreed to build the fence on the
line to be established by the Biglow survey; that the
witness was present and assisted in making the sur-
vey, carried the flag, and Dennert's son carried one
end of the chain; that the survey was made and the
stakes driven and corners set as the surveyor went
along, and that when he had gone around the tracts,
the survey was satisfactory to both parties; that they
then built a fence along the line established by the
survey; that the witness built the fence and Dennert,
Sr., furnished part of the material, and his father fur-
nished the remainder; that Dennert and his son were
present when the survey was made; that the land on
each side of the line was cultivated by Ulfers and Den-
nert respectively until 1884, when the witness left the
place.    That the fence remained there all the time
while he lived there; that after leaving the house of
his father he visited him off and on until 1893 or 1894,
when his father moved from there.   That during all
the time while he lived there and during all his visits
he never noticed any change in the line or the fence
built thereon.

That after his father left the place the appellant
moved on it, and has occupied it ever since.   That he
saw the premises just previous to the trial in April,
1909, and he noticed that most of the old fence had
been torn down, and that a new wire fence had been

placed there, some ten feet over on the land formerly occupied by his father. That the north end of the old fence was still standing. That the old fence was a straight worm fence built of rails, and the corners of the fence were placed on his father's land by agreement between him and Dennert. That when he was last there he saw the marks of the old fence on the ground and new stakes put there by a surveyor in the line of the old fence.

That he did not know who called Biglow to make the survey, whether it was his father or Dennert. That Biglow had some deeds there while making the survey. That the survey he made began on the north end at the northeast corner of his father's land and ran down to a rock in the creek. He then went back and surveyed this fraction where the corner is supposed to be. Biglow in surveying the property ran around the fraction and surveyed the line in dispute, that is, the fraction of three acres and something sold out of the original Ulfers' place.

He also testified that his father and Dennert agreed that the line surveyed by Biglow should be their dividing line. The agreement was not in writing. That there was an old fence there prior to and at the time when this agreement was made; "it was there when we moved on the place."

There were a number of other witnesses introduced by appellant, whose testimony corroborated much of the testimony of J. A. Ulfers.

The respondent in order to sustain the defense, testified in his own behalf, substantially as follows:

That he purchased the Rudolph Dennert place in the year 1903 and received a warranty deed, and went into possession of it on July 1, 1903. That at the time he moved there he found an old rail fence on the western boundary of the land. That about a month afterwards he met the appellant and the latter said to him,

246 Mo.—10

"I understand you want your land surveyed."
"Why," I says, "I haven't thought about it yet." I
says, "I don't know; ain't the line all right, the cor-
ners? Do you know the lines or the corners?" He
said, "No, sir, I don't know no corners on my land."
I told him, "I don't know the lines because I ain't ac-
quainted. I just bought it and I am sort of new in this
country, and if you don't know the line and I don't
know the line, I think it would be right well to survey
it." He said, "I wish you would survey it, because
I would like to find out where the true line is."
"Well," I says, "If that is your intention I am satis-
fied with that."

Proceeding, he testified further, that they dropped
the subject there; and that about two weeks later they
met again and appellant asked the witness if he had
engaged Wehmeyer to survey his land. The answer
was no. He then said, "I wish you would have the
land surveyed so that we can find the true line between
your land and mine." Witness replied that he would
get Mr. Wehmeyer and let him survey the land and
run the line between them. That Wehmeyer is the
county surveyor.

That he requested all the parties who were inter-
ested in the lands to bring their deed so the surveyor
would know how to survey the lands.

That he wrote to Wehmeyer some time in October,
1903, to come up and make the survey; that he prom-
ised to come in November, but did not do so until
March, 1904. That when the surveyor came, they went
to the home of appellant and requested him to come
over the next day to make the survey; that they got
their chainmen, and the next morning appellant and
the other landowners further up the line appeared.
That Wehmeyer surveyed the lands of both the witness
and that of the appellant; also that of Peters and
Meyer. That he surveyed all of those places, ran en-

tirely around them.   That he had appellant's deed there and used it in making his survey.

That he saw the lines run, and staked off; that he placed his new wire fence on the line established by the surveyor between his land and that of appellant.

That after the surveys were completed, he and appellant agreed to build a new fence along the line established between them; that the witness was to pay for sawing the lumber and making the posts for the entire fence, and appellant was to haul the lumber and posts and build the entire fence.   That in pursuance to that agreement appellant hauled the logs to the sawmill of Mr. Mutert, and witness hired Fritz Garde to split the posts; that Garde split one hundred and fifty posts on his land and he paid him for his work; that he paid Mr. Mutert for sawing the lumber and had the receipts from both him and Garde.   That appellant tore down the north end of the old fence.

That there were two small tracts of land in controversy; the north one was about one hundred and twenty feet long and six or eight feet wide at one end and runs to a point at the other, while the south tract was about three hundred feet long and twelve feet wide at one end and ran to a point at the other end.

That the old rail fence which was there when he purchased the place was crooked, that is, it did not run on a straight line, it had bends and was very crooked.   That this old fence disappeared in the latter part of March, 1905, and that he did not know who moved it.   That this was almost two years after appellant agreed to build the new fence.

That appellant seemed to be pleased with the surveys when first made, but when he saw where the fence was to be built he seemed to get out of humor and would say but little.   Appellant never built the fence he agreed to

That they had several conversations about it and appellant suggested additional propositions looking to a settlement of the matter, but witness would not agree to that without the agreement should be reduced to writing and that each party should execute a bond in the sum of $1000, conditioned that each should abide by the agreement.

That on May 17, 1906, in the presence of Mr. Peters and Mr. Knipker, he said to appellant that he would agree to abide by the survey made by "any competent surveyor of St. Charles, Montgomery or Franklin counties." "Yes sir; county surveyor or government surveyor, if there was one, it would suit me better, and I had to be satisfied with the surveyor and that it had to be in writing and a thousand dollar bond on top of it." That the appellant refused this proposition and the negotiations there stopped.

That the posts he hired Garde to split disappeared also and that he does not know what became of them.

That after appellant refused to build the fence as per agreement, he, the witness, had the wire fence, mentioned in the evidence, built along the line established by the Wehmeyer survey, which consisted of two smooth galvanized wires, stretched along on posts set right on the line; that this fence of his has been cut to pieces about a dozen times.

That the new wire fence was on the line established by the Wehmeyer survey and was perfectly straight, but the old rail fence was not; it was very crooked and varied from the line of the wire fence. At the north end the wire fence runs right into the middle of the old rail fence, and as you go south it leaves the old fence and the space between widens most all the way down to the south end where they are ten or twelve feet apart. However, at one point near the center of the wire fence, the old rail fence almost touches the wire fence.

That he built the wire fence on July 2 and 3, 1906. Appellant came over after his cows which he had put up, and saw him building the wire fence and asked if he was putting it on the line and when informed that he was, the appellant said that was all that he wanted, and turned away and drove his cows home.

That he had only one survey made and that was on March 3 and 4, 1904, by Mr. Wehmeyer. That he did not have another agreement with the appellant to build the fence in the year 1906, but offered to enter into another agreement in that regard about that time, but appellant declined to enter into it.

That at the time Wehmeyer made the surveys for them, they were on the best of terms; both he and Wehmeyer dined and stayed with appellant while the survey was being made, at the request of the latter.

That appellant set some of the posts in pursuance of agreement to build the party fence, but subsequently he or someone else removed them; that appellant never completed the fence, so in 1906 the witness built the wire fence before mentioned. That at this time the feeling between him and appellant was not friendly, that he did not know what offended the latter, unless he became so when he saw where the new fence would run.

On re-direct examination witness testified that the original agreement was that he was to furnish the material for the party fence, and appellant was to furnish the labor necessary to construct it on the line of the Wehmeyer survey, and that there was never any modification of that agreement made by them. That he simply waited for appellant to build the fence, and when he saw appellant was not going to do so, he built the wire fence on the line where appellant had agreed to build it, and that appellant then instituted this suit. That he did not use the posts made by Garde in building the wire fence, because he did not want to

haul them. Later they disappeared, but he did not know what became of them.

On recross-examination witness testified that appellant came to him three or four different times and requested him to have the surveys made, and maybe oftener, before he wrote to Mr. Wehmeyer to come make them.

John Mutert, the sawmill man, Fritz Garde, the man who split the posts, William Peters and Frank Meyer, two of the adjoining landowners, William Riske, John D. Waller, farmers, Dr. A. O. Bentnick, A. H. Wehmeyer, county surveyor, and many others, testified on behalf of respondent, and fully corroborated respondent's testimony in almost every particular.

Both appellant and respondent introduced many deeds, plats and other exhibits in evidence.

The plats are poorly drawn and incomplete, and some of them give no corners or directions whatever. For those reasons, we have been compelled to largely put aside the plats and gather the facts of the case, as best we can, from the oral testimony of the witnesses and the deeds introduced in evidence.

The deeds show that the legal paper title to the land in controversy is in the respondent; in fact, that is not disputed by counsel for appellant.

I. Counsel for appellant, at some length, state, at the outset of their brief, and cite in support thereof many authorities, certain academic propositions of law, which we need not here stop to consider.

Counsel for appellant first assign as error the action of the trial court in admitting in evidence, on cross-examination, certain parts of the testimony of J. A. Ulfers, one of the witnesses offered by appellant. That testimony was elicited for the purpose of showing that the survey made by Biglow, establishing the boundary line, as contended for by counsel for ap-

pellant, upon which the old rail fence between Hyronimous Ulfers' and Rudolph Dennert's land was constructed, was incorrect, and did not properly establish or accurately locate that true line between them. Counsel contend that said testimony was irrelevant and immaterial for the reason that, if Ulfers and Dennert agreed upon the line upon which the old fence was constructed, as the true line, then it was wholly immaterial whether that line was correctly located by Biglow or not. Many authorities are cited in support of that contention, and because of its soundness, we presume, it is not controverted by counsel for respondent. However, counsel for him insist that said testimony of Ulfers was admissible in this case, notwithstanding the soundness of the legal proposition previously stated.

Their position is that, if it be conceded that Ulfers and Dennert agreed upon a fixed boundary line between them, then appellant's contention would be sound, but contending, as counsel for respondent do, that no such agreement was ever entered into, a question of fact is thereby presented to the jury for determination, and that any evidence which tends to show that no such agreement was ever made, or which contradicts the testimony of J. A. Ulfers upon that question, is admissible in evidence.

That being true, clearly the testimony complained of was admissible for both of said purposes, especially in the light of the facts disclosed by this record, namely:

(a) That he, J. A. Ulfers, was the only human being on earth who ever heard of that agreement and was the only witness who testified that any such an agreement was ever entered into between them, notwithstanding the fact that young Dennert was living and assisted in making the Biglow survey, and presumably would know as much about the agreement as young Ulfers did.

(b) That the appellant himself, the purchaser of the land from Hyronimous Ulfers, never heard of said agreement. His words and whole conduct for years regarding the Wehmeyer survey, and the agreement between him and the respondent to build a party fence upon the lines established by that survey, show conclusively that he never heard of any such agreement.

Common prudence would have suggested to appellant, before or at the time he purchased the land from Ulfers, that he should have made inquiry of the latter as to the location of the boundary lines thereof, and common knowledge and experience teach us that such inquiry is usually, if not universally, made by all purchasers of land, when present, as the appellant was in this case. Presumably, for this reason, if for none other, he was more likely than anyone else to have heard of the agreement, if in fact it was ever entered into, and the fact of his having never heard of it, is evidence that it never existed.

(c) Practically, the uncontradicted evidence shows that the old rail fence which witness Ulfers said was located upon the Biglow survey was not straight, but was crooked, meandering in and out, and at one point near the middle thereof, the fence came almost to the line established by the Wehmeyer survey, which all the evidence shows was a straight line, and from there meandered along an irregular line north and south, varying in places, in and out, from a straight line many feet, which, if we correctly understand the record and plats introduced in evidence, caused the narrow strips of land involved in this controversy to be located upon the appellant's side of the old rail fence.

This evidence tends strongly to show that the old rail fence was not put upon the line of the Biglow survey or of any other survey, for that matter, for the reason that the witness Ulfers, himself, testified that the Biglow survey was a straight line, which presum-

ably is true, for a surveyor generally runs a straight line and not a crooked one like a snake, even though it should vary from the true course. Therefore, if the Biglow survey located a straight line, as Ulfers testified it did, then his testimony to the effect that the old rail fence was built upon that line is unquestionably untrue, that is, provided the testimony of many of the other witnesses who testified that the fence was crooked, is true, but be that as it may, that was a question for the jury to determine, and the evidence complained of was admissible for the purpose of showing that fact, and to contradict said witness.

It necessarily follows that, if the Biglow survey located a straight line between the farms of Hyronimous Ulfers and Rudolph Dennert and that the old rail fence mentioned was crooked, meandering in and out many feet in places, and not straight, then the testimony of J. A. Ulfers, to the effect that they agreed upon the Biglow survey as the true line between them, and that in pursuance of said agreement they built said fence upon that line, is untrue. At any rate, that evidence was admissible in evidence, tending to prove that no such agreement was ever entered into.

It also follows from the foregoing facts, if the jury found them to be facts, that there was no agreement made and entered into by and between said Ulfers and Dennert fixing a boundary line between them, or that they built a fence upon that line for the purposes claimed by appellant.

On behalf of and at the request of counsel for appellant, the court instructed the jury as follows:

"1. The court instructs the jury that if they believe and find from the evidence that Rudolph Dennert, while owner of the land east of the line in controversy, about the year 1878, agreed with Hyronimous Ulfers on the line run by Biglow mentioned in the evidence as the division line between their respective tracts of land, and that afterwards the said Dennert and the

said Ulfers built their division fence on such division line so agreed upon, and that the fence so built is the old fence mentioned in evidence, and if the jury further believe and find from the evidence that plaintiff and said Ulfers, under whom said plaintiff claims, have ever since occupied the land on their side of such division line and up to the same to the time of the entry, if any, of the defendant on the west side of said division line and said fence, then it is wholly immaterial where the survey would put the line; and the said Rudolph Dennert and all persons deriving title to the land east of said division line and fence under him (said Dennert), including the defendant Gruebbel, are bound by said agreed division line and fence and are not entitled to any land west of said division line and old fence. And if the jury further believe and find from the evidence that the defendant at the time of the institution of this suit, September, 1908, was and is now in possession of said land sued for, their verdict must be for the plaintiff for the possession of the land sued for and described in the evidence.

"2. If the jury believe and find from the evidence that the plaintiff Wm. R. Hilgedick and those under whom he claims, who in this case is Hyronimous Ulfers, have been in the open, notorious, peaceable; continuous, uninterrupted, exclusive and adverse possession of the strips of land in controversy and up to the old fence mentioned in the evidence for a period of ten years preceding the entry, if any, of the defendant on said land, and that the defendant at the time of the institution of this suit was and is not in possession of said land, their verdict must be for the plaintiff for the possession of said land.

"3. The court instructs the jury that the plaintiff is not bound to prove both an agreed division line and adverse possession for ten years, as defined by the other instructions herein, in order to entitle plaintiff to recover herein. But the plaintiff may recover on

proof of either such agreed division line or such adverse possession.

"4. The court instructs the jury that if they believe and find from the evidence that the plaintiff or the plaintiff and his grantor, Hyronimous Ulfers, for a period of ten years preceding and up to the time when the defendant entered into the possession of the land sued for have been continuously in the actual possession of said land up to the old fence mentioned in the evidence, claiming the land up to said old fence as their own, then such possession is adverse possession within the meaning of these instructions, unless the jury further believe and find from the evidence that the plaintiff or his grantor Ulfers did not claim the land up to said old fence unconditionally as the true division line. In the event you find from the evidence that the plaintiff or his grantor Ulfers did claim the land up to the said old fence unconditionally as the true division line as hereinbefore explained, it makes no difference that the plaintiff or said Ulfers was mistaken as to the location of the true division line nor that said old fence line may not have been the true division line, nor that plaintiff or the said Ulfers may not have intended to take any of the land east of the true division line.

"5. The court instructs the jury that if they believe and find from the evidence that Rudolph Dennert, while owner of the land east of the line in controversy, and Hyronimous Ulfers, while owner of the land west of the line in controversy, did establish an agreed division line between their respective tracts of land, and that afterwards the said Ulfers and the said Dennert built their division fence on such division line so agreed upon, and if the jury further believe and find from the evidence that said Ulfers thereafter occupied the land on his side of such agreed division line and up to the fence so built for the period of ten years and that said fence is the old fence mentioned

in the evidence and that said Ulfers claimed to own said land up to such division line, then the said Ulfers owned the land on the west of and up to said division line and old fence as fully as if his deed called for and described the said line and old fence as the western boundary line of his said land and in such case the deed to Gruebbel, the defendant, could not and did not convey to said Gruebbel any of the land west of such agreed division line and old fence.''

These instructions presented the law of the case to the jury in as favorable a light as the appellant was entitled to have it, and of course they do not complain of the action of the court in giving them.

The converse of the legal propositions stated in the foregoing instructions were submitted to the jury, in instructions asked by counsel for respondent.

The principle objection urged against respondent's instructions is that there was no evidence upon which to predicate them.

This objection is not well grounded as previously shown.

We have set out at some length the substance of the testimony for the purpose of showing that there was evidence tending to show that there was no agreement made and entered into by and between Ulfers and Dennert fixing the boundary line between their tracts of land, etc., and also tending to show that neither Dennert nor the appellant claimed adversely to Ulfers and the respondent.

We therefore rule this point against the appellant.

In addition to giving the instructions for respondent before mentioned, negativing the propositions submitted to the jury by instructions on behalf of appellant, counsel requested and the court gave the following instruction for respondent, viz.:

''The court instructs the jury that if they believe and find from the evidence that one Ulfers and one

Dennert were the adjoining owners of the lands in dispute in this case about the year 1879, and that they about that time procured one Surveyor Biglow to run a line between said adjoining tracts of land for the purpose of erecting a fence for their convenience between their said tracts of land, and that on said Biglow line a rail fence was erected, then the line marked by the rail fence will not be regarded by the jury as establishing an agreed boundary line between their said tracts of land, unless you further find from the evidence that said Ulfers and Dennert agreed that said line marked by said rail fence should be thereafter the boundary line between their land and that each of them thereafter claimed to own to the said line marked by the said rail fence and no further."

Counsel for appellant complain of this instruction for the reason stated, that there was no evidence introduced to show that Ulfers and Dennert erected the old rail "fence for their convenience."

It is true there was no evidence introduced for the purpose of showing that the fence was erected for the convenience of the parties, nor for any other purpose for that matter, but the supposition is that it, as well as all other fences, are erected for the use and convenience of the parties who build them. Nor was there any evidence tending to show that the fence was erected for the purpose of establishing the boundary line between Ulfers and Dennert. But the evidence for the appellant tended to show the line was established by the Biglow survey and that Ulfers and Dennert agreed upon that line as the true dividing line, and in pursuance to that agreement the fence was erected thereupon, not for the purpose of establishing the line (for that had already been done by the survey and the stakes and corners had been previously set by the surveyor), but for the uses and purposes that all farm fences are erected, namely, to inclose the premises, and to exclude therefrom man and beast, and clearly

this is the sense in which the word convenience in the instruction was used.

No other meaning could have been drawn from the word, nor could it have misled the jury or injured the appellant in the least, for the simple reason that the purpose for which the fence was erected was not an issue in the case in any sense of the word.

There are other minor questions presented and briefed by counsel, and after a careful consideration of them, we are of the opinion that none of them cut so deep into the merits of the case as to change the result before indicated. We will not, therefore, prolong this opinion by discussing them.

There was sufficient evidence introduced to justify the court's action in submitting the case to the jury upon the theory of the respective parties, and the jury under proper instructions having found the issues for the respondent, we are of the opinion that the judgment should be affirmed.

It is so ordered. All concur.