JOSEPH STEINBERG ET AL., Appellants, v. MERCHANTS BANK OF KANSAS CITY.—67 S. W. (2d) 63.

Division Two, December 20, 1933.

*B. M. Achtenberg* and *E. H. Gamble* for appellants.

*I. J. Ringolsky, Wm. G. Boatright, Harry L. Jacobs* and *Ringolsky, Boatright & Jacobs* for respondent.

TIPTON, J.—This is an action for money had and received. The amended petition alleges that on account "of deposits of money" made by the Southwest Wholesale Grocery Company, the respondent is indebted to the assignor of appellants. Respondent's answer admitted that the Southwest Wholesale Grocery Company was a depositor and that all the deposits made by it "created a duty on the part of the defendant to pay on demand out of said deposits all checks signed by the Southwest Wholesale Grocery Company," and the answer further alleged that all deposits made by the company "were withdrawn on checks signed in the manner directed by it." The reply alleged that the checks in question were issued for the personal use and benefit of the payee, Greenbaum, which had not been authorized by the company and "that defendant had actual knowledge of the fact that the checks were issued without authority of the Southwest Wholesale Grocery Company or of Steinberg." The case was submitted to the jury without instructions except as to the form of verdict. The jury returned a verdict for the respondent.

The Southwest Grocery Company, located in Kansas City, Missouri, was a corporation engaged in the wholesale grocery business. It did its banking business with respondent, the Merchants Bank of Kansas City, Missouri. Harry Tanenbaum was an officer and stockholder of the Southwest Grocery Company and in the fall of 1920 his interest was purchased by Joseph Steinberg and members of his family. About this time the assets of the Southwest Grocery Company were taken over by a common-law trust organization in which were Joseph Steinberg, J. F. Zukerman, M. Zvirin, J. D. Greenbaum and Sam Wedlansky. Sam Wedlansky had no financial interest in this organization. One-half of the shares of this organization were owned by Steinberg and his relatives and the other half by Greenbaum and his relatives. After the organization of this common-law trust, the bank account of the Southwest Grocery Company was transferred to the new organization, the Southwest Wholesale Grocery Company (which will be hereinafter referred to as the company). A signature card was made out which reads as follows: "Southwest Wholesale Grocery Company by Joseph Steinberg, Manual Zvirin, J. L. Zukerman." Greenbaum's name was to have been added to this card but never was. However, the bank had a signature card with his name on it as he carried a personal account at the bank as did Steinberg. It was understood at the beginning that all checks must be signed by Steinberg and one of the other above named men who were trustees of the company. Testimony on behalf of the respondent tended to show that in about thirty days the signature card was changed so that the respondent could honor checks signed by any two of the trustees. This was disputed by Steinberg. In the early part of May, 1921, the company had a fire in which most of its assets were destroyed. In the latter part of September, 1921, insurance drafts to pay the fire loss, totaling some $39,000, were turned over to Greenbaum and he and Zvirin took the drafts down to the respondent and deposited them. The respondent refused to give the company credit on the drafts until the same were collected. By October 5, 1921, the respondent had received the proceeds of the drafts and had credited the same to the credit of the company, with the $3,000 it had on hand at that time making a total of approximately $42,000. On October 5, Greenbaum and Zvirin were informed that the proceeds of the collection of these drafts had been deposited to the credit of the company. They then told Lebrecht, the president of the bank, to get out all the paper and that on account of the fire they had agreed to liquidate and divide up in a friendly way. At their request Lebrecht wrote on universal check forms the following checks which were signed by Zvirin and countersigned by Greenbaum:

Check payable to "yourself" (respondent) for $7,066.89 which paid a note signed by the company.

Check to H. Lebrecht for $6,000, which was to indemnify Lebrecht

and another banker by the name of Rieger who had signed a forthcoming bond for the company in order to obtain release of an attachment.

Check to respondent for $250 given for a cashier's draft of the same amount issued to Rinolsky & Friedman, in payment of an attorney's fee due them from the company.

Check to Greenbaum for $4,047.11 which was endorsed by him in blank and delivered to respondent and received by it in payment of past due note for $4,000 signed by Greenbaum.

Check to Greenbaum for $8,643.55 which was endorsed in blank and delivered to respondent and received by it in payment of past due note for $8,500 signed by Greenbaum.

Check to Greenbaum for $4,609.69 for which Greenbaum either took a certificate of deposit or a cashier's check.

The check to H. Lebrecht for $6.000 was a check to indemnify him and a man named Rieger who had signed a forthcoming bond in a suit pending in Kansas City, Kansas, in which Tanenbaum was the plaintiff and the company and trustees were defendants, on account of the stock which Steinberg had purchased from Tanenbaum. The money which Steinberg was to pay to Tanenbaum went into the new organization and the new organization assumed the obligations that Steinberg owed to Tanenbaum. Checks for $4.047.11 and $8.643.55 are the checks in controversy in this action. The check to Greenbaum for $4,047.11 was endorsed by Greenbaum and delivered to the respondent in payment of a note for $4,000, signed by Greenbaum. The check to Greenbaum for $8,643.55, was endorsed in blank, delivered to the respondent and received by it in payment of a past due note for $8,500, signed by Greenbaum. These two notes were secured by collateral which Lebrecht testified was worth as much as the face of the notes.

There was testimony on behalf of the respondent that it understood that the two notes signed by Greenbaum were for the benefit of the company. There was testimony to the effect that the respondent knew that Greenbaum was in the habit of borrowing money on his personal credit for the company. Lebrecht testified that he had heard of no controversy existing between the Steinberg group and the Greenbaum group and that Steinberg had never complained to the bank about any of the checks. Greenbaum testified that he did not tell Lebrecht of any disagreement of the trustees but, that on the contrary, stated to Lebrecht that the trustees were liquidating and dividing up by agreement. Evidence on behalf of the respondent showed that the first time there had been any complaint made in regard to these checks was about a week before the present suit was filed, when Mr. Achtenberg, one of Steinberg's attorneys, called Lebrecht and told him that he was figuring on suing the bank. This was almost five years after the checks were cashed. There was left on deposit some $12,000, which the Greenbaum group claimed was

Steinberg's share together with the $6,000 check made payable to H. Lebrecht.

Steinberg, after learning of these transactions on behalf of the Greenbaum group, was not satisfied with the division and brought suit to have a receiver appointed for the company. This present suit was instituted by the receiver on behalf of the company against the respondent bank. There is no complaint made as to any of the checks given on October 5, except the two that went to pay the note signed by Greenbaum. By a decree in the receivership suit the assets of the company in this action were assigned to Steinberg and his relatives and he and his relatives were substituted as plaintiffs in this action. They filed an amended petition showing the assignment to Steinberg, but in other respects the amended petition was identical with the original petition. Other pertinent or essential facts will be stated in the course of this opinion.

I. The appellants assign as error the failure of the trial court to give their instruction directing the jury to return a verdict in their favor. The two issues before the trial court as to why the directed verdict should have been given are clearly stated in the brief of the appellants and are as follows:

"1. Whether or not Greenbaum and Zvirin were authorized to execute checks in behalf of the Southwest Wholesale Grocery Co. without the countersignature of Steinberg. The evidence on this issue was sufficiently conflicting to make the jury's finding against the appellant conclusive.

"2. Whether or not the two checks, Exhibits 5 and 6, in the sum of $4,047.11 and $8,643.55 respectively which cancelled Greenbaum's personal notes held by the bank were properly chargeable against the deposit of the Southwest Wholesale Grocery Co. Plaintiffs contend that the issuance of these checks was unauthorized and that the charging of these checks to the company account constituted an unlawful diversion of trust funds. Defendant does not deny that the issuance of the checks was unauthorized, but contends that Section 2838, Revised Statutes 1929, made it necessary for plaintiffs to prove that the defendant 'had actual knowledge' that Greenbaum and Zvirin had no authority to issue these checks and that plaintiffs failed to so prove. The plaintiffs counter by denying the application of this statute to the facts in this case and further contend that even though the statute does apply, that plaintiffs have met the burden of proof imposed on them."

Section 2838, Revised Statutes 1929, was first enacted in 1917. This section reads as follows:

"If any check, draft or order of any corporation, firm or copartnership shall be given in payment of the debt of any officer, agent or employee, of said corporation, firm or copartnership, the payee or other person collecting such check, draft or order shall

not be liable to said corporation, firm or copartnership therefor, unless it shall be shown that such payee or other person, at the time of collecting same, had actual knowledge that said check, draft or order was issued without authority of said corporation, firm or copartnership.''

Prior to its enactment, the rule in this State was that where one accepted check, draft or order of any corporation, firm or copartnership in the payment of the debt of an officer, agent or employee of a corporation, firm or partnership, he did so at the risk of being required to return to the corporation, firm or partnership the funds so received in the event payment was not authorized. In other words, he accepted the check in payment of an individual's debt at his peril. Since the above section went into effect, one accepting payment under such circumstances would not be required to refund it, unless he had *actual knowledge* that check, draft or order was issued without authority.

Appellants contend that this section does not apply in this case for several reasons. We deem it unnecessary to pass upon the reasons assigned by appellants as to why this section does not apply because of appellants' pleadings. In appellants' reply they state:

''Plaintiffs further aver that the three checks aforesaid were charged by defendant bank against said account and passed by it to the credit of said Greenbaum, not for any purpose of the Southwest Wholesale Grocery Company, but solely for the personal use and benefit of said payee, and were applied by said Greenbaum and said bank to the payment of personal obligations of the said Greenbaum to the defendant; and that it was the intent of all the parties to said checks including defendant, when the same were drawn and handled as above set forth, that such use should be made thereof and that defendant had actual knowledge of the fact that said checks were issued without authority of the Southwest Wholesale Grocery Company, or of said Steinberg.''

The above quoted part of appellants' reply pleads the effect of this statute. It at least pleads that the respondent had *actual knowledge* that the checks in question were issued without authority of the company or Steinberg. Having pleaded that respondent had actual knowledge that checks were issued without authority, we believe it is necessary to show that fact. Appellants are bound by their pleadings.

In the case of State ex rel. Boatmen's National Bank of St. Louis v. Webster Groves General Sewer District No. 1 of St. Louis County, 327 Mo. 594, 37 S. W. (2d) 905, l. c. 908, we said:

''The general rule is that facts admitted in the pleadings must be taken as true for the purpose of the action. The pleader is estopped to take a position inconsistent with such judicial admissions. [49 C. J., pp. 122-125; Lilly v. Menke, 143 Mo. 146, 44 S. W. 730; Bensieck v. Cook, 110 Mo. 173, 19 S. W. 642, 33 Am. St. Rep. 422; Richards v. Johnson, 261 S. W. 53; Knoop v. Kelsey, 102 Mo. l. c. 297,

14 S. W. 110, 22 Am. St. Rep. 777.] Numerous cases are cited in the footnote to that citation in Corpus Juris. These rulings comprehend various situations in which such estoppel occurs where the record shows that the pleader states facts or assumes a position in his petition or answer, he cannot be heard to take a position inconsistent with such statement.''

In the case of Bruce, To The Use of Pullis v. Sims, 34 Mo. 246, l. c. 251, we said: ''Their averment was probably unnecessary, but, having made it, they must abide by it.'' To the same effect are the following cases: Stottle v. Ry. Co., 321 Mo. 1190, 18 S. W. (2d) 433; Richards v. Johnson (Mo.), 261 S. W. 53; Petrie v. Reynolds (Mo.), 219 S. W. 934; Boyajian Bros. v. Reinheimer (Mo. App.), 229 S. W. 441; St. Louis v. United Rys., 263 Mo. 387, 174 S. W. 78; and Weil v. Posten, 77 Mo. 284.

Moreover, the record shows that the cause was tried on the theory that the respondent had actual knowledge that the checks were issued without authority of the company and, of course, the appellants are bound by that theory in this court. We believe it was necessary, before the instruction directing a verdict for the appellants should have been given, to show that the checks were received in payment of an individual obligation of Greenbaum, and that the respondent had actual knowledge that these checks were issued without authority.

The appellants contend that ''if this case could be deemed one that is within the statute, the evidence is such as to justify the court in finding, as a matter of law that the defendant (respondent) had the 'actual knoweldge' therein required.'' The two checks in question were signed Southwest Grocery Company by Zvirin and countersigned by Greenbaum. The omission of the word ''Wholesale'' was a clerical error. [Guess v. Russell Bros. Clothing Company (Mo. App.), 231 S. W. 1015; 2 Morse on Bank and Banking (6 Ed.), p. 979, sec. 444.] Under the evidence and the finding of the jury the checks were properly executed. In fact, the appellants in this brief have admitted this fact.

We believe that the evidence was sufficient for the jury to find, as it did, that the respondent did not have actual knowledge that the two checks were issued without authority. Lebrecht testified that Greenbaum and Zvirin told him that the firm was to be dissolved in a friendly way; he positively denied any knowledge that the trustees were in any disagreement, or that he knew of any lack of harmony existing between the trustees; or that he knew the checks were unauthorized. He further testified that Steinberg did not complain about the two checks and that the firm account was continued in this bank for several months after the date of those checks. He, also, testified that he knew the Greenbaum notes were personal obligations of Greenbaum, but always believed that they were the debts of the company made for the benefit of the company and that the company received the proceeds of the loans.

"Where the transferee of the agent, although knowing that the money belongs to the principal, believes that the debt is also. the principal's debt, and is payable out of the trust funds, he becomes a bona fide holder, and the principal cannot recover." [21 R. C. L. 914.]

We believe that the evidence was such as to justify the trial court in submitting to the jury the question as to whether or not the respondent had actual knowledge that the checks were issued without authority.

In the case of Holland Banking Co. v. Republic National Bank, 328 Mo. 577, l. c. 588, 41 S. W. (2d) 815, l. c. 820, we said:

"Neither negligence nor diligence of the board of directors of the. Holland Bank would destroy the statutory right of the National Bank to accept the drafts in question in payment of Sanford's indebtedness to it, absent actual knowledge on its part that the issuance of the drafts was unauthorized."

·Since there was sufficient evidence to justify the court to submit to the jury the issue as to whether the respondent.had actual knowledge that the checks in question were issued without authority of the company, the court properly overruled appellants' request for a directed verdict.

II.   Appellants, also, requested the trial court to give an instruction directing the jury to return a verdict for interest. If they were not entitled, as we have held, to a directed verdict in their favor, it would therefore follow that they were not entitled to a directed verdict for interest.

III.   The appellants next complain that the court erred in admitting evidence tending to show that Greenbaum had borrowed money on several occasions for the benefit of the company.   On cross-examination of Steinberg he was asked:

"Q.   Just answer my question whether or not you had him go out on his own paper to banks in Kansas City, Kansas, and Kansas City, Missouri, and borrow money so that the company could have it because the company couldn't borrow on its own paper?   A.   He never borrowed a dollar outside of the Merchants Bank.

"Q.   Did he borrow money for the company at the Merchants Bank?   A.   He did, but I signed the note with him.   The company borrowed, not Greenbaum.

"Q.   I am talking about Greenbaum.   A.   No, he never borrowed a dollar for the company's benefit."

Lebrecht testified that Greenbaum had borrowed money from other banks for the benefit of the company.   This evidence bore on the question of whether or not the respondent had reasonable cause to believe that the notes represented money borrowed by Greenbaum for the benefit of the company.   It went to the ultimate question

of whether or not the company's money had been received in payment of a known private obligation. It contradicted Steinberg's testimony. It was admissible for the purpose of impeaching him. [State v. Williams, 309 Mo. 155, 274 S. W. 427; Smith v. Kansas City Southern Ry. Co., 279 Mo. 173, 213 S. W. 481; Hilgedick v. Gruebbel, 246 Mo. 140, 151 S. W. 731.]

■ IV. Appellants assign as error the refusal of the trial court to admit certain evidence which they claim tended to counteract that evidence admitted on the question of whether or not Greenbaum ever borrowed money for the benefit of the company.

The first complaint made is to the rejection of appellants' Exhibit 15. This exhibit was a guaranty to Steinberg whereby he was guaranteed that the corporation had made a certain net profit during a certain period of time. It did not tend to disprove the fact that Greenbaum was in the habit of borrowing money for the benefit of the company. It did not tend to prove that respondent had actual knowledge of the unauthorized issuance of these checks. It was executed more than a year prior to the date of the checks in question.

Complaint is made of the refusal to allow answers to questions asked Wheeler, the bookkeeper, as to whether or not the books showed that on February 1, 1921, Greenbaum was indebted to the company for certain collections. The question of how much Greenbaum owed the company or the company owed him at any time was not an issue in the case. It did not show that Greenbaum had not borrowed money for the benefit of the company.

Complaint is made of the refusal of the trial court to permit Wheeler to state that the journal entries of the corporation, the Southwest Grocery Company, showed that Greenbaum had loaned money to that company. If he did, it did not tend to prove that he had not loaned money to the new company, the common-law trust.

The next complaint is to the refusal of the court to admit in evidence the entire decree in the case of Steinberg v. Zukerman. The court did permit Section b of Paragraph 9 of the decree to be put in evidence for the purpose of showing that the receiver of the company had assigned this cause of action to the appellants. The respondent was not a party to the suit and was not bound by any of the issues in that case.

■ V. The next assignment of error is that the court erred in admitting respondent's Exhibit P (1), which is as follows:

"Kansas City, Mo., Oct. 31—'21

"Received of Merchants Bank—

"Statement of account with cancelled vouchers which will be examined immediately. Errors or omissions, if any, will be reported

in ten days. If no errors are reported by us in that time statement will be considered correct.

"_____

"By—————————————————."

This was objected to for the reason that "there was no testimony thus far produced that any receipt of this type was signed," and that the company's bookkeeper, Wheeler, "has no definite recollection, that he had some idea but that idea might have been obtained from the practice that he is now engaged in; that he does not know of his own knowledge that any receipt had been signed."

Before this exhibit was admitted in evidence testimony had been introduced showing that it was the unvarying custom of the bank to require a receipt to be signed. The evidence further showed that such receipts were only kept for about a year and then destroyed. This particular receipt could not be found. We believe that as the original receipt was accounted for, the exhibit was properly admitted as secondary evidence. [Scrivner v. Amercan Car & Foundry Co., 330 Mo. 408, 50 S. W. (2d) 1001.]

■ A further objection was made that the exhibit was irrelevant, immaterial and proved no issue in the case. The respondent pleaded in its answer the receipt and the failure of the depositor to give any notice of any objections to the payment of these checks for almost five years after the checks were returned, as one of its defenses to this action.

In Reynolds v. Third National Bank (Mo.), 225 S. W. 901, l. c. 903, we said:

"Where, in the absence of fraud or forgery, the bank balances the passbook of a depositor and delivers the book with the canceled checks to him showing the actual amount on hand, it is the duty of the depositor to examine such book in a reasonable time and make complaints, if any are justified; otherwise it is held to be an account stated and binding on both parties. [7 C. J. 415; Leather, etc., Bank v. Morgan, 117 U. S. 96, 6 Sup. Ct. 657, 29 L. Ed. 811; Kenneth, etc., Co. v. Nat. Bank of Republic, 96 Mo. App. 125, 70 S. W. 173; McKeen v. Bank, 74 Mo. App. 281-282; 3 R. C. L. 161.]"

Appellants in their brief admit that it is the duty of a depositor to examine the returned checks and report any error in a reasonable length of time, and if he does not do so, the depositor is estopped from maintaining an action for the error of the bank, provided the bank has not been negligent.

Appellants rely upon the rule of law announced in the case of First National Bank v. Farrell, 272 Fed. 371. In that case the plaintiffs' agent had been given authority to draw on his principal's account checks not in excess of $1,000 which fact the defendant bank knew. The defendant had cashed checks for the agent in excess of that account. The court in its opinion said:

"Therefore the law did not impose upon depositors in this case the

duty to check up a pass-book or examine monthly statements to prevent the defendant bank from continuing its own wrongful conduct; nor did the law exonerate the bank from acts which it knew were wrong simply because the depositors had not found it out and had not told it to stop."

Appellants in their brief say, "Here, we are entitled to recover, if at all, for the misconduct of the bank itself. The bank cannot charge us with negligence in not discovering its own fraud or misconduct, by handing us cancelled checks to which we are entitled. . . ."

By this argument the appellants assume as true the very issue that they had to prove. That is, that the respondent cashed the checks knowing that they were issued without authority. Respondent contends that it did not have any knowledge that the checks were drawn without authority, and if this is true, it was entitled to notice of error, if any, within a reasonable length of time after the checks were returned to the company. Under these conditions the failure to give such notice would be a defense to any action that the company may have had. [Reynolds v. Third National Bank, supra, and cases cited therein; England National Bank v. United States, 282 Fed. 121; Hammerschlag Mfg. Co. v. Importers' & Traders' National Bank, 262 Fed. 266.]

We believe that this evidence was properly admitted and if the appellants wanted to limit the effect of this evidence, it was their duty to have asked proper instructions to that effect.

Moreover, the respondent surrendered collateral of the value of $12,500 upon cashing these checks and no demand was made upon the respondent for almost five years and it lost its opportunity to regain this collateral. We believe there was no error in admitting this exhibit.

VI. Appellants next complain that the court erred in submitting the case to the jury without any instructions other than as to the form of verdict. Neither the appellants nor the respondent asked for any instructions. We have repeatedly held that it is not error for the trial court to submit the case to the jury without instructions. [Barr v. Nafziger Baking Co., 328 Mo. 423, 41 S. W. (2d) 559, and cases cited therein.]

We have examined the record and find no prejudicial errors. The judgment of the trial court is, therefore, affirmed. All concur.