In re **KANSAS CITY JOURNAL–POST CO.**

**BOSTIAN v. SCHAPIRO.**

No. 12793.

Circuit Court of Appeals, Eighth Circuit.

Aug. 11, 1944.

A. J. Granoff, of Kansas City, Mo., (Samuel W. Sawyer and Claude A. Ferguson, both of Kansas City, Mo., on the brief), for appellant.

John W. Oliver, of Kansas City, Mo. (R. B. Caldwell, of Kansas City, Mo., on the brief), for appellee.

Before GARDNER, JOHNSEN, and RIDDICK, Circuit Judges.

JOHNSEN, Circuit Judge.

The trustee of the Kansas City Journal-Post Company, bankrupt, petitioned the referee for a summary order against Morris Schapiro to turn over $24,000 alleged to belong to the estate. To a show-cause order, Schapiro responded that he had legal title to the funds and was an adverse claimant, and he asked that the trustee's petition therefore be dismissed for want of summary jurisdiction. On a preliminary inquiry, the referee held that the matter properly was cognizable in summary jurisdiction and ordered that the cause pro-ceed to trial on its merits. Schapiro petitioned for review; the District Court reversed, 51 F.Supp. 1009, 1017, 1018; and the trustee has appealed.

The principles governing the exercise of summary jurisdiction in bankruptcy have been quite fully stated by the Supreme Court. The bankruptcy court has no summary jurisdiction to deal with a controversy to property of which the court has neither actual nor constructive possession. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 481, 60 S.Ct. 628, 84 L.Ed. 876. It does not have constructive possession of property held by a third party under a substantial adverse claim of right. Taubel-Scott-Kitzmiller Co. v. Fox, 264 U.S. 426, 432, 433, 44 S.Ct. 396, 68 L.Ed. 770. A substantial adverse claim exists "when the claimant's contention 'discloses a contested matter of right, involving some fair doubt and reasonable room for controversy' * * * in matters either of fact or law." Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 469, 70 L.Ed. 897. There is no substantial adverse claim where the contention is "on its face made in bad faith and without any legal justification", May v. Henderson, 268 U.S. 111, 119, 45 S.Ct. 456, 460, 69 L.Ed. 870, or where it is "so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense." Harrison v. Chamberlin, supra. The court therefore is "not ousted of its jurisdiction by the mere assertion of an adverse claim; but, having the power in the first instance to determine whether it has jurisdiction to proceed, the court may enter upon a preliminary inquiry to determine whether the adverse claim is real and substantial or merely colorable. And if found to be merely colorable the court may then proceed to adjudicate the merits summarily; but if found to be real and substantial it must decline to determine the merits and dismiss the summary proceeding." Harrison v. Chamberlin, supra, 271 U.S. at page 194, 46 S.Ct. 468, 70 L.Ed. 897.

The trustee here sought to sustain summary jurisdiction on the preliminary inquiry, by offering all the evidence taken in No. 12,791, In re Kansas City Journal-Post Co. (Bostian v. Schapiro), 8 Cir., 144 F.2d 791, this date decided, which was received without objection to its competency or relevancy on the part of Schapiro. This evidence has been set out rather fully in our

814

opinion in No. 12,791. Only the part which immediately bears upon Schapiro's contention of being an adverse claimant to the $24,000 need be referred to here.

Some time before the bankruptcy, Schapiro had purchased from a third party all the secured bonds, some unsecured notes, and the capital stock of the insolvent newspaper corporation, for a price of $100,000. The seller was interested, however, in having publication of the newspaper continued as long as possible, and the purchase agreement therefore provided that, as a condition of the sale and as part of the consideration for the transaction, the purchaser would be required to pay into the treasury of the corporation an additional $100,000 in new working capital, for which the corporation was to issue him 500 more shares of capital stock. This had been duly done at the time the deal was closed.

The deal had been engineered by a man named Newman, and, according to the testimony of Schapiro and Newman, they had an oral arrangement between them by which Schapiro was to take the bonds and the notes, and Newman was to have the capital stock with the accompanying right to control and operate the corporation. Under their arrangement, Schapiro was to pay $176,000 of the $200,000 consideration for the bonds and notes, and Newman was to pay the other $24,000 for the stock. The effect of their testimony was that Schapiro had merely advanced the $24,000 for Newman when the deal was closed.

The stock had been assigned in blank and delivered to Schapiro on the closing of the deal. There was testimony in the record to the effect that Schapiro's attorney had delivered the certificates to Newman immediately after the deal was closed but had accepted them back for safekeeping in Schapiro's lock box, and, on the other hand, there were circumstances which were subject to the inference that Schapiro never had purported to surrender the stock to Newman until after the bankruptcy, and that he was still the legal owner of it at the time. The evidence thus was capable of supporting a finding either way, insofar as the question of whether Schapiro was still the owner of the stock when the $24,000 payment was made might have materiality in this controversy.

The record expressly shows that immediately after the deal was closed Newman became the president of the corporation, and that, within a few hours thereafter, he issued a check of the corporation to Schapiro's attorney for $24,000, in alleged payment of his share of the deal. There was testimony on behalf of Schapiro to show that Newman stated at the time that he had been authorized to borrow the money temporarily from the corporation, and that Schapiro accepted the check in reliance on this statement. Newman had not in fact been authorized by the corporation to borrow the money. Schapiro claimed that he nevertheless became vested with title to the funds, by virtue of section 3225, Mo.Rev.St.1939, Mo.R.S.A. § 3225, which provides: "If any check * * * of any corporation * * * shall be given in payment of the debt of any officer, agent or employee, of said corporation, * * * the payee or other person collecting such check * * * shall not be liable to said corporation * * * therefor, unless it shall be shown that such payee or other person, at the time of collecting same, had actual knowledge that said check * * * was issued without authority of said corporation * * *."

■ Except for this statute, the trustee's right to the funds, on the facts set out above, clearly would have been legally absolute. O'Bannon v. Moerschel, 204 Mo. App. 155, 222 S.W. 1035. But in view of the statute, it is just as clear that the proceeding involved a substantial and controverted issue of controlling fact. Cf. Steinberg v. Merchants' Bank of Kansas City, 334 Mo. 297, 67 S.W.2d 63, 66; Holland Banking Co. v. Republic Nat. Bank, 328 Mo. 577, 41 S.W.2d 815, 818. If the right given by the statute was intended to apply only to outside parties and not to those having a fiduciary relation to the corporation, it was still a substantial and controverted issue of controlling fact whether Schapiro actually was the legal owner of the stock at the time. If the statute was applicable to Schapiro, it was a substantial and controverted issue of controlling fact whether either Rosen or he had actual knowledge at the time that the check had been issued without authority from the corporation. Schapiro's contention therefore disclosed "a contested matter of right, involving some fair doubt and reasonable room for controversy," and his claim was accordingly a substantial adverse claim in this proceeding.

■ The trustee's contention, that the testimony of Schapiro and his attorney to show that they had no knowledge of New-

man's lack of authority to issue the check is wholly "fictitious" and "beyond belief," is, on the facts and the Missouri statute, mere jury argument. Nor is anything added to the situation here by the trustee's argument that, because Newman shortly thereafter misappropriated an additional $75,900 to his own use, Schapiro and Newman must have been engaged in a conspiracy to defraud the corporation, for this also is simply an attempt to compel the acceptance of an implication not legally absolute against direct, substantial and credible testimony. There is no jurisdiction to determine a right in summary proceedings, without consent, where it is necessary to weigh the force of opposing credible evidence on a substantial and controverted issue of controlling fact. Cf. Harrison v. Chamberlin, 271 U.S. 191, 195, 46 S.Ct. 467, 70 L.Ed. 897; In re Yorkville Coal Co., 2 Cir., 211 F. 619, 620, 128 C.C.A. 570. The trustee quotes from In re Meiselman, 2 Cir., 105 F.2d 995, 998, to the effect that the Supreme Court decisions, which we have referred to above, are not to be interpreted "as requiring the holding that there is reasonable doubt from the claimant's own testimony alone, when it is disbelieved by the referee". But a right to consider, within proper mental bounds, the self-interest of a claimant, in examining whether his contention is made in good faith or is a mere pretense, where it rests wholly upon his own testimony, cannot in any event clear the legal hurdle here, for Schapiro's contention was supported by the testimony of an outside party, his attorney, which was not incredible on its face and which therefore could not be discounted or brushed aside in a summary proceeding.

Schapiro has made a number of contentions in regard to the sufficiency of the pleadings and the formalities of the preliminary inquiry before the referee, which he argues, would alone be sufficient to warrant affirmance of the District Court's order. The District Court did not discuss these contentions and, in view of the conclusion reached here on the fundamental question involved, there is no occasion for us to consider them.

The District Court's denial of summary jurisdiction is affirmed.