**In the Matter of WIRE CORPORATION OF AMERICA, a New Jersey corporation, Bankrupt.**

**No. 277.**

Max L. Rosenstein, Newark, N. J., for Trustee.

Sanford Silverman, Newark, N. J., for Albert Goldman.

HARTSHORNE, District Judge.

The Bankruptcy Trustee here petitions for review of the Referee's denial of his application for the issuance of a turn-over order against one Albert Goldman.

Previous to bankruptcy the Wire Corporation of America had been subject to reorganization proceedings under Chapter XI of the Bankruptcy Act, 11 U.S. C.A. § 701 et seq. The reorganization plan provided for the company to continue business under certain Trustees, and accordingly it ordered machinery to be made and operated for it by the Garand Tool & Die Co., a concern run by one Gartner, the cost of such machines being $7,600. After demand by the Garand Company for payment, the Reorganization Trustees issued their check for $7,600, payable to the Garand Co., and authorized Goldman, an officer of the Wire Corporation, to deliver it to the Garand Co., but only upon receipt of a paid invoice for the machinery. Goldman took the check and obtained such paid invoice. But the ultimate result of the transaction was that the Garand Co. received but $1,000 of the check proceeds, Goldman pocketing the $6,600 balance. All this occurred some 9 months prior to the adjudication of bankruptcy, and some 11 months prior to the turn-over proceedings.

How Goldman came to pocket this $6,600 is the subject of real dispute. His claim, testified to both before and during the turn-over proceedings, is that, to accommodate Gartner, Garand's proprietor, he was authorized by Gartner to endorse such check in Garand's name, and collect the proceeds, and that, as

further arranged with Gartner, he turned over the $1,000 to Gartner, but Gartner agreed to loan him personally the $6,600 balance. In fact, the Trustee's petition for the turn-over order recites Goldman's claim to this effect. The Trustee, on the contrary, claims that Goldman simply stole, or embezzled, the check and its proceeds. Such was the situation presented to the Referee by the petition for the turn-over order itself and on the hearings thereon. Goldman all the while objected to the jurisdiction of the Bankruptcy Court to make the turn-over order, though he filed no formal answer, doubtless relying, as he had a right to do, on the Trustee's admission in his petition of Goldman's adverse claim. In Re Hammond Standish Co., D.C.Mich. 1954, 126 F.Supp. 353.

After taking substantial testimony and on the merits, the Referee refused to take jurisdiction of the petition for the turn-over order "in the absence of proof of his (Goldman's) ability to comply with the said order", due to lack of proof of his then possession of the $6,600.

■ In Harrison v. Chamberlin, 1925, 271 U.S. 191, 46 S.Ct. 467, 70 L.Ed. 897 and Maggio v. Zeitz, 1947, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476, our highest court has dealt at length with the rationale and requirements of turn-over orders in bankruptcy. It is there noted that "the turnover procedure is one not expressly created or regulated by the Bankruptcy Act * * * (but the) courts of bankruptcy have fashioned the summary turnover procedure as one necessary to accomplish their function of administration." Maggio, 333 U.S. at pages 61, 63, 68 S.Ct. at page 404. However, before the Bankruptcy Court can deprive the party against whom the turn-over proceedings are brought of his ordinary right to a jury trial on the issues involved, it must appear either that (1) such party has consented to such summary proceedings, or that (2) the adverse claim of such party "is so unsubstantial and obviously insufficient, either in fact or law, as to be plainly without color of merit, and a mere pretense."

But "An actual claim may be adverse and substantial even though in fact 'fraudulent and voidable' ". Harrison, 271 U.S. at pages 194, 195, 46 S.Ct. at pages 468, 469. See accord In re Kansas City Journal-Post Co., D.C.Kan.1943, 51 F.Supp. 1009, affirmed 8 Cir., 1944, 144 F.2d 812. Thus, unless the parties consent to the jurisdiction of the Bankruptcy Court on turn-over proceedings, same can not be entertained by such Court, if there is a substantial issue of law or fact, whereupon the parties must be left to their ordinary plenary remedies.

■ Furthermore, it is made clear in Maggio, 333 U.S. at page 64, 68 S.Ct. at page 405, that to obtain a turn-over order the Bankruptcy Trustee has the burden to establish by "clear and convincing evidence" that (a) the property has been abstracted from the bankruptcy estate, and (b) is in the possession of the party proceeded against at the time of the turn-over proceedings. Furthermore, such procedure "is one primarily to get at property rather than to get at a debtor * * *. It is essentially a proceeding for restitution rather than indemnification * * *. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets * * *. It is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding", 333 U.S. at page 63, 68 S.Ct. at page 405. Moreover, the Court makes it clear that an inference of continued possession after the time of abstraction of the property, varies with the facts—as to the character of the property abstracted, the character of the abstractor, and otherwise. And while proof of possession during the turn-over proceedings becomes res judicata therefrom, that proof does not necessarily establish possession at a later period, as when an adjudication on contempt is sought.

■ In the case at bar, while the Referee concludes "that the testimony of

Albert Goldman is unworthy of belief", it is quite clear that in so doing the Referee has considered the substantial issues of both law and fact raised by the above contrary claims of the Trustee, on the one hand, and Goldman, on the other, and has affirmatively decided such fact issue upon the criterion of credibility. It is thus clear that Goldman's claim was not a merely colorable one without substance, but one requiring the determining of the credibility of the witnesses on either side of a substantial issue. Thus, since Goldman has consistently objected to the jurisdiction of the Bankruptcy Court, the issue between the parties must be decided, not in bankruptcy, but in a plenary suit.

Hence we do not reach the question of whether the Trustee has met his burden of establishing "by clear and convincing evidence" Goldman's possession of the proceeds of the check at the time of the turn-over proceedings, some 11 months after he pocketed such money, this proof consisting solely of an inference of continuance of possession from that prior time, weak as it is under such circumstances.

Nor is May v. Henderson, 1924, 268 U.S. 111, 45 S.Ct. 456, 460, 69 L.Ed. 870, to the contrary. For in this case, decided long prior to Maggio, the Court dealt with the "merely colorable" claim of one who was obviously a fiduciary, and in a situation where it was not shown that such fiduciary was "unable to comply with the [turn-over] order", due to lack of possession of the bankrupt's property or its proceeds. For here, if Goldman's claim is correct, a matter which he can insist that a jury decide, he did, in theory at least, turn over the check to its payee, Garand, as he was required to do. If then the payee authorized him to retain a part of the proceeds, as he claims, he was no longer acting as a fiduciary for the bankrupt, but as an individual debtor of the Garand Company. Thus Goldman does not come within the rule adverted to in May, strictly dictum though it be, under the facts in that case, that if a fiduciary "has put it out of his power to

deliver it (the property entrusted to his care), he may nevertheless be compelled to account for its worth." This is quite regardless of the question raised in that regard by the rule in Maggio, that no turn-over order can be issued unless "the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the (turn-over) proceeding." Nor is Taylor v. Quittner, 9 Cir., 1955, 218 F.2d 549, to the contrary. For there the proceeds of the cars illegally taken were still in the possession of the adverse claimant, banked in the account of his corporate alter ego.

The order of the Referee will accordingly be affirmed.