In the Matter of CITIZENS LOAN AND SAVINGS COMPANY.

Richard W. SNOOKS, Appellant,

v.

Robert L. JACKSON, Appellee.

Bankruptcy No. 77–70215–B–SJ.
Civ. No. 78–6030–CV–SJ.

United States District Court,
W. D. Missouri,
St. Joseph Division.

Feb. 15, 1980.

Robert R. Raymond and Jennifer A. Gille, Shughart, Thomson & Kilroy, P. C., Kansas City, Mo., for appellant.

Duke W. Ponick, Jr., Kansas City, Mo., for appellee.

## MEMORANDUM AND ORDER

SACHS, District Judge.

Because of docket problems which may hopefully be clearing, this two-year old bankruptcy appeal has just been reached for initial consideration.

After issuing a show cause order and conducting a hearing, the bankruptcy judge (as Referee in Bankruptcy) issued a turnover order, requiring the bankrupt's former president, who retired some seven years before the bankruptcy, to account for all of his "consultant's fees" received during the years immediately preceding bankruptcy. The turnover period begins with 1975, when the "consultant" (who had continued as a director) moved his residence from the bankrupt's principal place of business and was no longer readily available for consulting services.

Challenges to the bankruptcy court's summary jurisdiction take several tacks: (1) the procedure by which appellant Snooks, the subject of this action,* was

---

* Appellant is Richard *W.* Snooks. His son and successor, now imprisoned on charges relating to the bankrupt corporation, is Richard *H.* Snooks.

brought before the Court is questioned; (2) Snooks claims to have a color of right to the fees received so that a plenary proceeding is required, in that (a) he was available for service and in fact claims to have performed some services, and (b) the fees were allegedly validly paid and received as pension-type payments, allowed by the bankrupt corporation in light of Snooks' prior service as president; and (3) in any event the money has been spent and a "turnover" order is not authorized.

In a thorough and scholarly opinion (which has, however, been sharply challenged on review) the bankruptcy judge concluded that the defenses were frivolous in nature, in that (1) no credible showing of actual service by Snooks was presented, (2) the "pension" theory was not supported by a valid and binding contract with the bankrupt, but on the contrary, payments appear to have been a diversion of corporation funds to finance consummation of a private arrangement between Snooks and his son and successor (who bought Snooks' stock at the time of Snooks' retirement), and (3) the expenditure of the funds received is no defense against a required "accounting" under a turnover order, when the order runs against a fiduciary such as a director of the bankrupt. Justification of the show-cause procedure is less clearly presented, in that the challenge is treated as raising a procedural technicality.

This case appears likely to go to the Court of Appeals, particularly if the bankruptcy court ruling is affirmed, and the Court concludes that expedited handling is more important than producing a detailed second opinion at this time. The Court will record, however, its initial reaction to the issues.

It would not be atypical for a somewhat loose pension or consulting fee arrangement to be made upon the retirement of a corporate president. Even if it was not initially legally enforceable, directors might be inclined to honor oral agreements of the incoming president. The self-interest of the parties in this case does create a most questionable situation. The transaction complained of appears to be quite vulnerable. If the Court were faced with a summary judgment motion, however, which, like the present proceeding, would deny to Snooks a right to a plenary trial before a jury, the Court believes it unlikely that summary judgment would be granted on this limited record. This suggests that the order should be reversed, so that a plenary action may be brought, if appropriate.

Even more doubtful, in the Court's initial view, is the propriety of a "turnover" order when there is little question about Snooks' testimony that the money has been spent on normal living expenses. Income from the corporation was his entire income. There is no indication that Snooks was actually managing the bankrupt corporation during the years after 1975 (the complaint is, rather, that he was not actively providing any "services"), his role as director appears to have been nominal, and the challenged payments were unrelated to his directorship. While the opinion under review notes that corporate insiders who have a fiduciary role have sometimes been held to "account" for property even though they may no longer have it, the Court is unable to find authority for expanding the "turnover" concept to a nonpossessory case like this one.

In the leading case of *May v. Henderson*, 268 U.S. 111, 119, 45 S.Ct. 456, 460, 69 L.Ed. 870 (1925), turnover authority was sanctioned where a fiduciary has sold or intermingled assets but not where funds have been dissipated in living expenses. Even in flagrant cases involving top executives, an inference of continued possession is generally required for a turnover order. *Sahn v. Pagano*, 302 F.2d 629 (2d Cir. 1962). See also *In re Wire Corporation of America*, 131 F.Supp. 586 (D.N.J.1955), reviewing the pertinent Supreme Court cases. Compare, *Tivon v. England*, 484 F.2d 639, 641 (9th Cir. 1973).

The show-cause procedure adds another dubious element to the case, although the Court finds it unnecessary to evaluate that issue.

The Court concludes, primarily relying on the problem of possession, that the order below should be reversed, for such further plenary proceedings as may be deemed appropriate.

SO ORDERED.